DONALD WAIN WEBSTER *v.* STATE OF INDIANA.

[No. 1-872A50. Filed March 19, 1973. Rehearing denied May 30, 1973. Transfer denied September 4, 1973.]

512

*Woodrow S. Nasser*, of Terre Haute, for appellant.

*Theodore L. Sendak*, Attorney General, *Wesley T. Wilson*, Deputy Attorney General, for appellee.

ROBERTSON, P.J.—The defendant-appellant (Webster) is appealing his conviction, after a bench trial, of robbery, IC 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956). He was accordingly sentenced to 10 to 25 years in the Indiana State Reformatory.

Webster's first specification of error states he was denied a fair trial because of prejudice on the part of the trial judge. The record discloses that after the jury had been selected on the original trial date, Webster and the State reached an agreement whereby Webster would take a test by polygraph If Webster passed the test the charge against him would be dismissed. If he failed the test he would waive his right to a jury trial. Webster's agreement to the test was made with full knowledge of his rights and he fully understood the proposal. Webster failed the polygraph test.

It is Webster's contention that the trial judge, knowing about Webster's failure of the polygraph test, was prejudiced by such knowledge. This prejudice was evinced, Webster maintains, in evidentiary rulings and the disregarding of certain portions of the evidence. Webster further contends that he was not aware of such prejudice until after the commencement of the trial before the court, when, according to CR. 12, it was too late to move for a change of judge.

We are of the opinion that Webster's after the fact allegation of prejudice is not sufficient to warrant a reversal under the facts of this case, because:

"Rulings and findings made by a judge in the course of judicial proceedings are not in themselves sufficient reasons

to believe that the judge has a personal bias or prejudice for or against a party." *U.S.* v. *Amick*, 7 Cir., 439 F.2d 351, at 369.

Webster's next allegation of error is directed to the trial court sustaining an objection made by the State on cross examination of Bennett Dove, the victim of the robbery. Mr. Dove was testifying as to the identification of Webster's picture from a group submitted to him in the hospital while he was recuperating from injuries inflicted during the robbery. Webster's attorney asked Dove if the pictures submitted to him contained a mixture of white and colored people, or if all of the pictures were of colored persons. The State then objected on the basis that Dove had already answered the question. Webster's counsel responded:

"Well, this is cross examination, your Honor, and I think what we are trying to do is arrive at the condition of his mind at that time because the way he is testifying now he's terribly or obviously illustrated some lack of memory either at the present time or inability at the time of looking at the pictures."

The court replied that he (Webster's counsel) had already gotten into that area and sustained the objection made by the State.

The rule of law applicable to Webster's argument is:

" '* * * The trial court in its discretion has wide latitude in permitting cross-examination to test the credibility of a witness by disclosing his general attitude toward the circumstances of the case, his interest, his motives, his prejudices, character and other influences which operate upon the mind, and *only clear abuse of such discretion demands reversal.*' (Emphasis ours). Blue v. State (1946), 224 Ind. 394, 67 N.E.2d 377, cert. denied 1947, 330 U.S. 840, 67 S.Ct. 976, 91 L.Ed. 1286. Our attitude, on review, should be the same, whether the error claimed is the admission or the rejection of cross-examination. Error, if any, must clearly appear, as we are slow to intervene in such cases." *Brooks* v. *State* (1973), 259 Ind. 678, 291 N.E.2d 559, at 560.

Additionally, it has been held:

> "Unquestionably the defendant had the right to rigorously cross-examine the witness for the purpose stated, however, cross-examination that will be permitted is, to a great extent, within the sound discretion of the trial court. Rariden v. State (1961), 242 Ind. 689, 177 N.E.2d 736.
>
> Only a clear abuse of such discretion or obvious error therein gleaned from our superior position will warrant a reversal. Rariden v. State (supra) ; LaMar v. State (1972), Ind., 282 N.E.2d 795." *Pinkston* v. *State* (1972), 258 Ind. 672, 284 N.E.2d 767, at 770. See also: *Shuemak* v. *State* (1970), 254 Ind. 117, 258 N.E.2d 158.

In view of the fact that Dove had undergone substantial cross-examination on the point which Webster's counsel sought to prove, and underwent even further questioning on the same and related points subsequent to the complained of ruling, we cannot say, as a matter of law, that the trial court committed error in holding as he did.

Prior to considering the remaining questions raised by Webster, it should be said that this court will not weigh the evidence nor resolve the questions of credibility, but will look to the evidence most favorable to the State and the reasonable inferences therefrom which support the verdict of the trial court or jury. *Washington* v. *State* (1971), 257 Ind. 40, 271 N.E.2d 888; *Davis* v. *State* (1971), 257 Ind. 46, 271 N.E.2d 893; *Grimm* v. *State* (1970), 254 Ind. 150, 258 N.E.2d 407; *Sharp* v. *State* (1970), 254 Ind. 435, 260 N.E.2d 593; *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558.

A summary of Dove's testimony reveals that he received his military disability check on the first of October, 1970. He went to a corner store to cash the check, leaving all but $20 with the storekeeper for safe keeping. He did some shopping and then returned home, retiring to bed at about 11 P.M. Thereafter he was awakened by having a man astraddle his chest beating him about the arms and face, demanding to know where the money was. Dove testified he was cut by a

razor and beat upon by a skillet. The assailant alternated between searching about the house and returning to Dove a couple of times, forcefully demanding to know about the the money. Dove apparently passed out and when he came to went to the neighbor's house. Assistance in the form of policemen and an ambulance was called. Dove's billfold, which contained the unspent portion of the $20, was taken in the robbery. Dove also testified as to identifying Webster's picture while he was in the hospital.

Other witnesses testified that Dove described his attacker to the police prior to being taken to the hospital. The police apprehended Webster several blocks away within an hour of being notified of the incident.

Dove also testified that Webster was at his house two days before with a white girl. They came into the house, remained several minutes and then left.

The two sub-arguments raised by Webster under a claim of error directed to the sufficiency of the evidence, are: (1) the court erred in finding Webster guilty based upon Dove's testimony; and (2) the court abused its discretion by considering testimony that Webster was at Dove's house two days prior to the robbery.

Webster, recognizing the heretofore cited rule that we cannot weigh the evidence nor determine the credibility of the wintesses, points out seven discrepancies in the testimony of Mr. Dove and then argues, in substance that these discrepancies are fatal to the case. We do not share in the conclusion drawn by Webster.

As held in *Baynard* v. *State* (1972), 259 Ind. 336, 286 N.E. 2d 844, the argument made by Webster goes to the weight of the testimony which is in the province of the trier of fact.

Nor can we subscribe to the argument that it was Dove's testimony alone that convicted Webster. Other witnesses lent

support to portions of his testimony. Even where the evidence is conflicting the trier of fact is still required to weigh the evidence. See *Black* v. *State* (1971), 256 Ind. 487, 269 N.E.2d 870.

As the State aptly argues, Dove never wavered from the position that Webster beat and robbed him "unless he had a twin brother".

Webster's second contention on the sufficiency of the evidence attacks admission of certain testimony of Deborah Lovett, who testified that she and Webster went to the house (Dove's) of "this guy who got a pension about the first" [of the month]. (Charles White, who was present in Dove's home at the time of the visit, testified that it was not Webster who was with Lovett). The question raised about this testimony is whether it is substantial evidence of probative value. The materiality or relevancy of this testimony was not questioned during the trial.

Webster cites us to *Lee* v. *State* (1972), 259 Ind. 301, 286 N.E.2d 840, as authority supporting this argument. In the *Lee* case, *supra,* Justice Prentice, in addressing himself to a similar argument, said:

"Admitting the inconsistencies in the testimony, arguendo, such would go only to undermine the credibility of the witnesses. Their credibility has been determined by the jury and will not be here disturbed. (Citing authorities)." 286 N.E.2d at 843.

The statute defining robbery reads in part:

"Whoever takes from the person of another any article of value by violence or by putting in fear, is guilty of robbery, and on conviction shall be imprisoned not less than ten [10] years nor more than twenty-five [25] years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period." IC 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956)

Webster says: (a) the State failed to prove the money taken, if any, belonged to Dove; (b) that United States currency in

the sum of $6.00 was taken as charged in the affidavit; and (c) that the State failed to prove it was taken from the person and possession of Dove at the time of the assault upon him.

Dove testified:

"Q. Did he ever take anything from you?
A. Billfold.

Q. And did this have any money in it?
A. Yes, but very little.

* * * * *

Q. Mr. Dove, what if anything did the person who robbed you take?
A. My billfold.

Q. Was there anything in the billfold?
A. Beg your pardon?

Q. Was there anything in the billfold?
A. Yes sir.

Q. And what?
A. Identification and a little bit of money."

The failure of the State to prove the $6.00 charged in the affidavit is not reversible error, for it has been held:

"Said specification of error is utterly without merit. Appellants were charged and convicted under Burns Ann. Stat. § 10-4101 which provides:
'Whoever takes from the person of another *any* article of value by violence or by putting in fear, is guilty of robbery * * *.' (Emphasis supplied)
Under this particular statute, the value of the thing taken is immaterial." *Adams* v. *State* (1970), 254 Ind. 509, 260 N.E.2d 878, at 883.

It was not necessary to prove ownership, but only possession on the part of Dove to constitute an element of robbery, *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538, or that the thing of value was taken from Davis' personal presence or personal protection.

*Smith* v. *State* (1969), 252 Ind. 148, 246 N.E.2d 765. See also: *Jackson* v. *State* (1973), 260 Ind. 61, 291 N.E.2d 892.

We are of the further opinion that the above cases dispose of Webster's allegations of error predicated upon a failure of the court to find for Webster because the State did not make a prima facie case for a failure to prove the $6.00 was taken from Dove.

Webster next contends the trial court abused its discretion and erred in a finding of guilty based on testimony regarding blood, a broken skillet, and a lack of testimony on fingerprints.

In dealing with the lack of fingerprints, or more properly the failure of the investigating officers to look for fingerprints of Webster at the scene of the crime, we note that such could be termed as deficient investigatory procedure on the part of the police, but it is not a significant legal argument warranting a reversal in this case.

Four police officers testified about blood in and about Dove's house and a broken skillet with blood on it which was found in the kitchen. On cross examination Webster's capable counsel extracted an answer from them which, in substance, demonstrated that there were no tests made to ascertain the substance to be blood. Webster, when apprehended, was asked to show his hands. The officers saw what was blood, in their opinion, on both of his hands.

The evidence is not material in proving an essential element of the charge of robbery, as it would be in proving the offense of inflicting an injury in the commission of a robbery. It is material in connecting Webster with the Dove robbery. Other testimony given by the officers, because of prior experience, demonstrated they were qualified to testify that it was blood. Other answers given would go to the weight of their evidence. *Baynard, supra, Black, supra, Lee, supra.*

Pervasive to most of Webster's argument is a common strain of thought represented by a quote from *Vuncannon* v. *State* (1970), 254 Ind. 206, 258 N.E.2d 639, which reads:

"It appears to us that this evidence lacks directness and freedom from uncertainty, qualities which substantive evidence of a probative value must have. A mere scintilla of evidence is not enough. Proof must be beyond a reasonable doubt." 258 N.E.2d, at 640.

Our review of the record indicates the State met its burden of proof in this case.

As can be seen from all of the foregoing opinion, we cannot assign error to the ruling of the trial court on Webster's motion to correct errors.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

## ON PETITION FOR REHEARING.

[Filed May 30, 1973.]

RORERTSON, P.J.—Webster's Petition for Rehearing correctly observes that the opinion failed to discuss a portion of his argument regarding prejudice on the part of the trial judge in that the judge had heard Dove state that he could not identify Webster as his assailant. We are of the opinion that this contention, like the polygraph test, falls under the *Amick* case, *supra*.

Petition for rehearing denied.

Lowdermilk and Lybrook, JJ., concur.