WILLIAMS *v.* STATE OF INDIANA.

[No. 968S155. Filed April 29, 1969.]

*Owen M. Mullin,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, *Duejean C. Garrett,* Deputy Attorney General, for appellee.

HUNTER, J.—This is an appeal from the Marion Criminal Court, Division Two. Appellant was charged by indictment with the crime of murder in the second degree, Ind. Ann. Stat. § 10-3404 (1956 Repl.) and, after jury trial, was found guilty of manslaughter. Ind. Ann. Stat. § 10-3405 (1956 Repl.). The verdict did not indicate whether the jury considered appellant guilty of voluntary manslaughter or involuntary manslaughter. Where trial is upon an indictment for murder, there may be a conviction for either voluntary or involuntary manslaughter. *Romeo v. State* (1930), 203 Ind. 116, 173 N. E. 324; *Pigg v. State* (1896), 145 Ind. 560, 43 N. E. 309.

Although counsel for the State of Indiana asserts that appellant is not entitled to a review by this Court of all the questions raised by his brief on this appeal by reason of omissions from his memorandum in support of his motion for new trial, in the interest of deciding cases on their merits, where possible, we will assume appellant has properly raised the errors asserted. Appellant argues in his brief that two grounds for reversal of his conviction exist:

First: That the evidence presented at trial was insufficient as a matter of law to support the verdict of the jury and

Second: That the evidence presented at trial establishes as a matter of law that defendant acted in self-defense.

The charge of murder and conviction of manslaughter in this case grew out of the fatal shooting of defendant's wife

on the night of May 19, 1967. In reviewing the sufficiency of the evidence to support the verdict of the jury, this Court will consider only that evidence most favorable to the State, together with all reasonable and logical inferences to be drawn therefrom. *Capps v. State* (1967), 248 Ind. 472, 229 N. E. 2d 794. If, upon such review, there is substantial evidence of probative value supporting the findings of the court below, the conviction will not be disturbed by this court. *Harris v. State* (1967), 249 Ind. 681, 231 N. E. 2d 800. The evidence when viewed most favorably to the State, reveals the following:

On the night of May 19, 1967, appellant, James Williams, arrived home from work at approximately 10:30 P.M. Shortly thereafter, he and his wife began arguing over whether one of appellant's taxicabs should be checked in at the house or at the cabstand. The argument moved to a bedroom in the upstairs portion of the house, where a violent fight ensued. The fight became so intense that a cabinet model sewing machine, lamps and tables were knocked to the floor and appellant's shirt was torn up.

Appellant went downstairs to another bedroom and took his gun out of the drawer where it was regularly kept. He then walked out of the house onto the front porch and climbed over a bannister separating the northern and southern portions of the house. Appellant's wife followed him onto the porch and across the bannister, and their fight continued. During the course of this fight on the porch, appellant shot his wife in the back. She fell, mortally wounded, in the front yard about four feet from the steps on the south side of the house.

Appellant's two sisters, Mrs. Ollie Payne and Mrs. Beulah Bridges, lived in the southern half of appellant's house. They stated that they became quite concerned upon hearing the violent fight between appellant and his wife, and attempted to get in the front and back doors. When unable to do so,

they entered appellant's side of the house through an attic passage. By this time the fight had moved downstairs. They then proceeded downstairs, and upon arriving at the living room heard a shot outside. They rushed outside and saw appellant's wife lying in the front yard.

The police were called and arrived a short time later. Mrs. Williams was found lying in the front yard bleeding from the back. At that time Mrs. Williams was still alive, so resuscitation was attempted, although without success.

The police entered the house and found appellant lying on a bed with a .38 caliber special revolver beside him. The gun had five live rounds of ammunition and one casing, and the barrel smelled as if it had been freshly fired.

Appellant was then taken to a police car in front of the house and placed in the back seat. Appellant related to the officers what had occurred, stating that during the fight he pushed his wife and that she fell off the porch, at which time he fired one shot which struck her. When asked why he shot his wife, appellant replied, "I just got tired of her shit."

Officer Gates, homicide detective, stated that, when he arrived, he examined the position of the body. He stated that it way lying approximately four feet from the steps on the south side of the house, and that actual measurement indicated the victim's head was 8'4" from a hedge which bordered the south part of the house. He further noticed that the victim's hands were open and empty. The evidence also indicated that no powder burns were found on the victim's clothing at the scene.

Dr. Gifford, pathologist and deputy coroner, investigated the death of Mrs. Williams and pronounced her dead at the scene. Dr. Gifford testified that, when he arrived at the scene, he saw appellant seated in the back seat of a police car parked in front of the house. He stated that appellant was sitting

with his head in his hands and rocking to and fro; that appellant shouted several times, "I done it, I done it," and that once appellant further shouted, "I done it, I got her on the go."

Dr. Gifford performed an autopsy and determined that the cause of death was an intraperatoneal hemorrage due to laceration of the left common iliac artery and vein. He stated that The laceration was caused by a gun shot wound in decedent's lower back. Dr. Gifford stated that he also found superficial abrasions on decedent's body of the type caused by a fall on concrete.

Dr. Gifford further testified that he noticed a ring of bruise around the bullet wound, and that he found no burns on decedent's body or clothes. On cross examination, Dr. Gifford stated that the absence of powder burns indicated to him that the weapon was some distance from the body when fired.

From the above summation it is clear that there is sufficient evidence of probative value from which a jury could find all the elements of manslaughter, particularly voluntary manslaughter. Ind. Ann. Stat. § 10-3405 provides in part:

> "Whoever voluntarily kills any human being without malice, expressed or implied, in a sudden heat . . . is guilty of manslaughter. . . ."

Accepting arguendo, appellant's assertion that actual intent to kill is a necessary element of voluntary manslaugther, (citing *Ketring v. State* (1936), 209 Ind. 618, 200 N. E. 212), it has long been held in Indiana that the element of intent to kill may be inferred from evidence that a mortal wound was inflicted upon an unarmed person by a deadly weapon in the hands of the defendant. *King v. State* (1968), 249 Ind. 699, 234 N. E. 2d 465; *Maxey v. State* (1969), 251 Ind. 645, 244 N. E. 2d 650; *Schlegel v. State* (1958), 238 Ind. 374, 150 N. E. 2d 563.

Since there is substantial evidence in the record from which an intentional, voluntary act of shooting by the appellant may be inferred, and since the appellant was shown by the State's evidence to have admitted the act itself, we hold that there is sufficient evidence to support the verdict of the jury and that appellant's first allegation of error is without merit.

The appellant's second contention, as stated earlier, is that the verdict of the jury is contrary to law in that the evidence establishes as a matter of law that the appellant was acting in self-defense when he shot his wife.

In the case of *King v. State, supra,* this Court held that the following must appear for a claim of self-defense to prevail:

> "Where one has taken the life of another human being, and thereafter contends that he did so in self-■ defense, he can only be successfuly in his contention if:
>
> (1) he acted without fault,
> (2) he was in a place where he had a right to be, and
> (3) he was in real danger of death or great bodily harm, or in such apparent danger as caused him in good faith to fear death or great bodily harm.
>
> *Bullard v. State* (1964), 245 Ind. 190, 195 N. E. 2d 856, 197 N. E. 2d 295; *Hightire v. State* (1966), 247 Ind. 164, 213 N. E. 2d 707. The burden is upon the State ■ to show that defendant does not meet one or more of these requirements. *Dorak v. State* (1915), 183 Ind. 622, 109 N. E. 771. Whether the State has borne its burden of showing that the homicidal act was not carried out in self-defense is a question of ultimate fact to be decided by the jury. *Robinson v. State* (1962), 243 Ind. 192, 184 N. E. 2d 16." 234 N. E. 2d at 468. See also, *Swift v. State* (1961), 242 Ind. 87, 176 N. E. 2d 117.

Whether a homicidal act was carried out in self-defense is an ultimate fact to be decided by the jury. *King v. State, supra; Swift v. State, supra; Robinson v. State, supra.* ■ Therefore, the same rules of appellate review of the evidence are applicable to a claim that self defense

was established as were alluded to with regard to sufficiency of the evidence.

The above recital of the record clearly demonstrates that there was substantial evidence of probative value to justify the jury in concluding that appellant was not in real danger of death or great bodily harm and/or that he did not in good faith fear death or great bodily harm due to apparent danger. Likewise, the record of the evidence justified the jury in determining that appellant did not act without fault. We therefore hold that the State has met its burden of proof on the question of self-defense.

For all the foregoing reasons judgment of the trial court should be affirmed.

Judgment affirmed.

DeBruler, C. J., Arterburn and Givan, JJ., concur.

Jackson, J,, concurs in result.

NOTE.—Reported in 246 N. E. 2d 762.