WILBUR PINKSTON *v.* STATE OF INDIANA.

[No. 1169S276. Filed June 29, 1972.]

*Bruce E. Bloom,* of Fort Wayne, for appellant.

*Theodore L. Sendak,* Attorney General, *William F. Thompson,* Assistant Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted of Voluntary Manslaughter and sentenced to imprisonment for not less than two nor more than twenty-one years. This appeal from said judgment presents two questions, the first relating to the substitution of an alternate juror and the second to the court's having restricted certain cross examination of a State's witness.

(1) Following submission to a jury of twelve and one alternate, juror number 6 was discharged and the alternate juror substituted. The record is devoid of any showing of the cause for such substitution, other than the allegation in the subsequent motion for mistrial indicating that juror number 6 had separated from the other jurors after the commencement of deliberation, nor does the record reflect any objection having been interposed at the time the substitution was made. Following such a substitution and prior to rendition of the verdict, the defendant orally moved for a mistrial, the minute thereon being as follows:

> "Comes now the defendant, prior to verdict, and moves the Court for a mistrial on the grounds that the alternate Juror in this cause was in a position to witness and overhear conversation pertaining to further experiments with the State's exhibit, and that Juror number Six (6), Mr. Kenneth M. Stine, subsequent to submission of cause to Juror, and prior to deliberation while in Court Room, that said alternate Juror then replaced Juror number Six (6), Mr. Stine, who had separated himself after submission, which motion for mistrial is now by the Court overruled."

Seven days subsequent to rendition of the verdict, the defendant orally moved the court to interrogate the alternate

juror concerning matters occurring subsequent to the submission to the jury. This motion was granted and the testimony of the juror heard, but it does not appear in the record. Upon said testimony, the court entered a finding that the alternate juror had not been influenced in any manner by evidence which had not been properly submitted.

We find no showing of harmful error from the foregoing. The naked allegation of the defendant in his motion for a mistrial charging that the alternate juror had been exposed to improper influences does not make it true. The evidential hearing one week later, we presume, was an attempt by the court to determine if there was any basis in fact for the charge, and it was determined that there was none. The record presents nothing to the contrary. If the proceedings appear to have been irregular, the burden is, nevertheless, upon the appellant to show that he was thereby harmed. *Pinkerton* v. *State* (1972), 258 Ind. 610, 283 N. E. 2d 376; *Calvert* v. *State* (1968), 251 Ind. 119, 239 N. E. 2d 696; *Messersmith* v. *State* (1940), 217 Ind. 132, 26 N. E. 2d 908.

The parties have dwelled at some length upon the absence of anything in the record to indicate that the trial court complied with the provisions of 1968 Repl. Burns Ind. Stat. Ann. § 4-7122, Acts of 1937, ch. 295, § 1 (Repealed by Acts of 1969, ch. 191, § 3), requiring that in cases where there have been two or more alternate jurors and it becomes necessary to substitute but one, the selection of the substitute should be by lot. We do not comprehend how any error could have arisen in this regard, as here there was but one alternate juror.

(2)    Subsequent to the commission of the crime and prior to the trial, State's witness, Clarine Jones, who was the mother of the decedent and the only eye witness to the crime, had been awarded custody of the four children of the defendant and the decedent. She was drawing $300.00 per month for their maintenance from the Department of Public Welfare. This

had been previously disclosed in evidence as well as had the fact that she had quit her former employment to care for the children and that the support allowance constituted her only income. On cross examination, the following dialogue occurred:

Question by Mr. Bloom (defense counsel):
"So would it then be accurate to say that you are then providing your own shelter and your own food and clothing, medical expense, and all other incidental expenses for yourself out of what the taxpayers pay you for these children?"

Mr. Helmke (prosecutor):
"It is wholly irrelevant and immaterial and I would ask that defense counsel be admonished."

The Court:
"Sustained and so ordered. Change your question, sir."

Mr. Bloom:
"Your Honor I never heard Mr. Helmke's basis for the objection."

Mr. Helmke:
"Irrelevancy and immateriality."

Mr. Bloom:
"This was gone into some extent by the prosecutor."

The Court:
"I am going to sustain the prosecutor and that statement should be disregarded. Proceed."

Defendant asserts that the curtailment of such cross examination was unduly restrictive and prevented him from disclosing the bias and financial interest on the part of the witness in the outcome of the trial. The relationship of the witness to the decedent, her custody of the children, the income therefrom and her dependency upon said income had been fully disclosed to the jury in prior examination, both direct and cross. (See transcript pages 125-127 and pages 181-204.) Unquestionably the defendant had the right to rigorously cross examine the witness for the purpose stated, however, cross examination that will be permitted is, to a great extent, within the sound discretion of the trial court.

*Rariden* v. *State* (1961), 242 Ind. 689, 177 N. E. 2d 736. Only a clear abuse of such discretion or obvious error therein gleaned from our superior position will warrant a reversal. *Rariden* v. *State, supra; LaMar* v. *State* (1972), 258 Ind. 504, 282 N. E. 2d 795.

The following from 3 Wigmore on Evidence, § 782 is applicable.

> "(3) Repeating the same testimonial matter of the direct examination, by questioning the witness anew on cross-examination is a process which often becomes desirable * * * in order to test the witness' capacity to recollect what he has just stated and to ascertain whether he falls easily into inconsistencies and thus betrays falsification. In spite of its frequent tedium and unskillful handling, this process often proves useful; and the discretion of the trial court must suffice to fix its limits:"

> "* * * Cross-examination is the great test of the knowledge as well as of the veracity of witnesses. The right to pursue it may sometimes be abused; and when it is sought to be abused, as when the counsel insists upon going over the same ground again and again, or when it is apparent that the witness has already fully answered without any appearance of evasion, and it is evident that the counsel is merely pushing the witness for sake of annoyance or for any illegitimate purpose, it is competent for the Court in its discretion to put an end to it. * * *."

We see no abuse or error in the trial court's ruling. The information sought to be elicited had been clearly imparted to the jury. The question objected to and denied was unnecessarily repetitive, and we are not in a position to criticize the trial court's ruling.

Judgment affirmed.

Arterburn, C. J. and DeBruler, Givan and Hunter, JJ., concur.

NOTE.—Reported in 284 N. E. 2d 767.