MICHAEL R. TURCZI v. STATE OF INDIANA.

[No. 672S79. Filed October 17, 1973.]

*W. Henry Walker, Walker and Walker,* of East Chicago, *John S. Diaz, Diaz and Moore,* of Portage, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—Appellant was indicted by a Lake County Grand Jury for murder in the first degree. The case was venued to the Porter Superior Court and tried by a jury during October 12-20, 1971. The jury found the Defendant-Appellant guilty and affixed his penalty as death. On November 18, 1971, the Court rendered judgment, sentencing the Appellant to die by electrocution. From this judgment, Appellant appeals to this Court.

Appellant first presents a group of of alleged errors pertaining to the conduct of the jury in discussing the case among themselves before submission. The validity of these allegations rests solely upon affidavits by an alternate juror. There was no supporting evidence from the bailiff in the matter. It is well-established in Indiana that a juror may not by affidavit impeach the verdict. The sanctity of verdicts would otherwise be diminished and no verdict could ever be final. Jurymen would forever be harassed. *Meno* v. *State* (1925), 197 Ind. 16, 164 N. E. 93; *Hutchins* v. *State* (1898), 151 Ind. 667, 52 N. E. 403; *Houk* v. *Allen* (1890), 126 Ind. 568, 25 N. E. 897.

The question thus becomes whether an alternate juror is, under these circumstances, to be considered a "juror." A juror is a person who is sworn or affirmed to serve on a jury. 50 C. J. S. *Juries* § 1 (1947). An alternate juror is such a person. Moreover, our Rule TR. 47 (B) which creates the category of jurors designated "alternate jurors" states that:

"The court may direct that not more than six (6) jurors in addition to the regular jury be called and impanelled

to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors. who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. Alternate jurors shall be drawn in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, power, facilities, and privileges as the regular jurors . . ."

It is clear that the concept of "alternate jurors" was created to improve judicial efficiency by eliminating the need for re-trials in situations where a juror, during the progress of a trial, becomes unable to perform his duties. It was not intended that the rule dilute the principle of the sanctity and finality of verdicts. Consequently, an alternate juror who has been privy to the jurors' conduct because he has taken the same oath as the regular jurors and performed all functions, except the final deliberation, of the regular jurors should be subject to the rule which protects the sanctity and finality of the jury verdict. Therefore, we hold that an alternate juror, as well as a regular juror, may not impeach the verdict.

Appellant also suggests that certain trial conduct of the prosecutor in this case was improper. Although Appellant has failed to follow Rule AP. 8.3(A)(7) in that he has not in the argument section of his brief specifically set out conduct he complains of and the reasons why such conduct was improper, we have culled the instances—about seven in number—from the "Statement of Facts" portion of Appellant's brief. Our conclusion is that the conduct complained of does not warrant reversal. The conduct complained of does not transgress the standards set out in *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312, where Justice Prentice stated that the burden is on the party claiming error to show that he was harmed and that this may be done by showing that the aggrieved party was placed in a position of grave peril by the conduct complained of. The conduct here, in our opinion, does not reach that standard.

Appellant next argues that the evidence upon which to base a conviction was insufficient. Briefly, the evidence reveals that Appellant and one Hudkins about 3:00 a.m. in the morning of November 28, 1970, went to the home of one Bobis. Bobis apparently turned State's evidence and became the crucial witness for the prosecution. His testimony was that upon being summoned by Appellant and Hudkins, whom he knew, all three men got into Appellant's car and drove to a gas station where they met, by apparent prearrangement, the victim. The victim, Appellant who was now displaying a gun and giving orders, and Bobis got into a second car while Hudkins remained with Appellant's car. Bobis, on orders from Appellant, drove to a wooded area. The road ended near a swamp, and Bobis stopped the car, and, at Appellant's command, shut off the ignition and the lights. Bobis, now thoroughly frightened, bolted from the car and began running. He heard four or five shots. Appellant soon overtook Bobis, put his arm around him and said, "It's over now. We are in good shape." The body of the victim was discovered later that morning. The victim was found to be dead from three bullet wounds to the head. A fourth bullet was found imbedded in the left door post of the car. The next evening at Hudkins' apartment the Appellant in the presence of Bobis told how he had shot the victim three times in the head.

Appellant points to numerous instances from the entire testimony of the State's crucial witness which, Appellant alleges, when considered cumulatively create such a web of inconsistency that no reasonable trier of fact would have credited such a witness. It is a distinction without a difference for Appellant to stress the cumulative effect of alleged inconsistencies.

"This court has consistently held that in reviewing an allegation that a verdict is contrary to law or not sustained by sufficient evidence, the Supreme Court will not weigh the evidence or resolve questions concerning the credibility of witnesses. Instead, the court will look to that evidence most favorable to the State and the reasonable inferences to be drawn therefrom, and the con-

viction will be affirmed if, from that viewpoint, there is substantial evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt of the crime for which he was convicted." (citations omitted)

*Blackburn* v. *State* (1973), 260 Ind. 5, 291 N. E. 2d 686. There was probative testimony on each and every element of the crime charged from a witness whom the jury believed.

Appellant's final contention relative to his conviction is that certain testimony regarding land owned by the victim in Michigan should not have been admitted into evidence by the trial judge. We think there are three reasons—each of them sufficient in itself—for disregarding this contention. First, Appellant's objection was on the ground of irrelevancy; yet, the Appellant and the victim were business partners. As to motive, it might be pertinent for the jury to know about land owned by a partner allegedly killed by the other partner. Second, at the time Appellant first objected to this testimony the court, at the suggestion of Appellant, reserved its decision until the "conclusion of the case." Appellant never again requested a ruling on the admissibility of the testimony. Thus, the Court did not rule on the objection and the evidence remained in the record. We think that under these circumstances Appellant waived his objection. We find no error in the court's action or failure to take action. Third, in order to establish that he was prejudiced by the testimony about the land, Appellant relies upon another affidavit by that same alternate juror who, as we have said above, is incompetent to impeach this verdict.

Lastly, Appellant raises the issue of the death penalty. Last year in *Adams* v. *State* (1972), 259 Ind. 164, 284 N. E. 2d 757, we held that in view of the uncertainty surrounding the constitutionality of the death penalty created by the United States Supreme Court's decision in *Furman* v. *Georgia* (1972), 408 U.S. 238, 33 L. Ed. 346, 92 S. Ct. 2726, "we

have no alternative but to remand this case to the trial court with directions to vacate its sentence imposing the death penalty and in lieu thereof impose a life sentence on the appellant." More recently, our legislature has provided for the death penalty in certain specified situations, Public Law No. 328, Acts 1973 (enacted April 24, 1973). The murder in this case pre-dates the enactment of that statute and is not—by the statute's own terms—covered thereby. Consequently, we direct the trial court to vacate its sentence imposing the death penalty and in lieu thereof impose a life sentence on the appellant. In all other respects, the conviction is affirmed.

All justices concur.

NOTE.—Reported in 301 N. E. 2d 752.