## WILLIAM BOOTH v. STATE OF INDIANA.

[No. 875S196. Filed August 20, 1976.]

*Douglas D. Church,* of Noblesville, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, William Booth, was indicted in Marion County on March 28, 1974, for the first degree murder of one Ron Kestner. On May 22, 1974, the case was venued to Hamilton County Superior Court. The Appellant was convicted on March 4, 1975, of murder in the second degree. The jury imposed a sentence of imprisonment

for a period of not less than fifteen nor more than twenty-five years.

## I.

The first argument presented by the Appellant is that the evidence at trial was insufficient to sustain the jury's verdict. That evidence revealed that on January 30, 1974, the Appellant was released from his job when it was suspected that he had been involved, while at work, in the theft of property of another employee. The manager who dismissed him was told by the Appellant "that he knew who told on him and that he would handle it in his own way."

That night, the Appellant called on another employee who was suspected of theft. Stating that he had come to ask a few questions, he carried a tape recorder, some beer, and a gun. According to the testimony of the employee,

"He then asked me if Ron Kestner had turned him in. I said I didn't think Ron had turned him in. And he said, 'I came here to kill you this evening,' and he looked over at my wife and said, 'If I kill you I am going to have to kill her but,' he said, 'I am not going to now.' He then said Ron Kestner's life isn't worth this much. * * *"

On the morning of January 31, 1974, the Appellant was seen arguing with the decedent. He accused the decedent of "getting him fired" and threatened him with a gun. After the two men struggled at a doorway, with the Appellant pushing the door one way and the decedent pushing it the other way, the decedent was shot. One witness testified that he heard the shot and saw the bright flash from the gun in the Appellant's left hand. The victim was not armed.

The pathologist who conducted the autopsy of the decedent testified that the cause of death was a gunshot wound of the neck. The doctor observed no powder burn on the victim and concluded that the wound was from "long range", beyond twenty or twenty-five inches. A number of witnesses were called by both the defense and the prosecution to give testi-

mony regarding the character of the Appellant, the decedent, and other witnesses.

The Appellant's sufficiency argument contends that there was not substantial evidence of probative value sufficient to establish that, pursuant to the statutory definition of second degree murder, the Appellant killed the decedent purposely and with malice. Ind. Code § 35-1-54-1 (Burns 1975). We do not agree.

> "As to purpose and malice, this Court, like courts in other jurisdictions, has held repeatedly that the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm permits an inference that the defendant was acting with malice and purpose. *Cambron* v. *State*, (1975) [262] Ind. [660], 322 N.E.2d 712; *Taylor* v. *State*, (1973) 260 Ind. 264, 295 N.E.2d 600, *cert. denied* 414 U.S. 1012, 94 S.Ct. 377, 38 L.Ed.2d 250; *Livingston* v. *State*, (1972) 257 Ind. 620, 277 N.E.2d 363; *Maxwell* v. *State*, (1970) 254 Ind. 490, 260 N.E.2d 787, *cert. denied* 402 U.S. 930, 91 S.Ct. 1525, 28 L.Ed.2d 863; *Jones* v. *State*, (1970) 253 Ind. 456, 255 N.E.2d 105; *Williams* v. *State*, (1969) 252 Ind. 154, 246 N.E.2d 762."

*White* v. *State*, (1976) 265 Ind. 32, 349 N.E.2d 156 at 160.

To rebut this inference, the Appellant testified at trial that the decedent had provoked their argument. The gun, he asserted, had discharged "some way or other" as the two men struggled. Various witnesses testified that the decedent was quarrelsome and violent.

In determining the sufficiency of evidence, this court cannot judge the credibility of witnesses or weigh evidence. We look at only the evidence most favorable to the State and the reasonable inferences to be drawn from that evidence. A verdict will not be disturbed if there is substantial evidence of probative value from which the trier of fact could reasonably infer that the defendant was guilty beyond a reasonable doubt. *Young* v. *State*, (1975) 264 Ind. 14, 332 N.E.2d 103; *Blackburn* v. *State*, (1973) 260 Ind. 5, 291 N.E.2d 686; *Jackson* v. *State*, (1971) 257 Ind. 477, 275 N.E.2d 538. The jury here was simply not required to believe the Appellant. The evidence was sufficient to support its verdict and we can find no error.

## II.

During cross-examination of John Jackson, a witness for the State, defense counsel asked:

"What kind of discharge did you get from the service, if you got one?"

Following an off-the-record conference between the trial court and counsel, a prosecution objection to this question on the grounds of relevance and materiality was sustained. The Appellant urges reversible error in this ruling.

The Appellant contends that the question as to the nature of the witness's military discharge goes to his credibility. This is not necessarily true. A discharge may be for a number of reasons not affecting a serviceman's credibility. It might be caused by a physical disability, for example, or some infraction of a military rule which has no relevance to credibility. In *Ashton* v. *Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210, this court held that not all convictions for crimes affect one's credibility. Justice Hunter wrote:

"In the case at bar, counsel for plaintiff-appellant questioned the witness in regard to convictions for *any* crime. If counsel had a particular conviction in mind, he failed to make its nature known to the trial court by an offer to prove. Having determined that all crimes do not necessarily reflect on the credibility of the witness, we are of the opinion that the trial court did not err in excluding the question. It appears that the question was nothing more than a 'fishing expedition' which, if answered, would not necessarily have revealed any admissible evidence. Such information could have been gained prior to trial by proper utilization of discovery."

258 Ind. at 63.

This reasoning is certainly applicable to questions regarding discharges from the armed forces. The record in this case fails to reveal that defense counsel had any particular discharge in mind. If he did, he failed to make it known to the trial court by an offer to prove. In the absence of such a record, and given an off-the-record conference between the trial court and counsel on both sides before the objection was sustained, we must hold that we find no error presented.

A similar problem is presented by the Appellant's contention that Defendant's Exhibit T was improperly excluded from evidence. This exhibit is identified in the record as a "piece of paper" offered for purposes of impeachment. No further foundation was laid. No further offer to prove was made. We cannot find error under such circumstances.

## III.

The Appellant's remaining contentions concern defense instructions which were refused by the trial court. Our review of the record reveals that the principles of law discussed in these instructions were adequately covered in instructions which were given by the trial court. It is not error to refuse an instruction the substance of which is covered in other instructions which are given. *Fuller* v. *State*, (1973) 261 Ind. 376, 304 N.E.2d 305; *Ledcke* v. *State*, (1973) 260 Ind. 382, 296 N.E.2d 412.

Error is first urged in the refusal of the trial court to give Defendant's Tendered Final Instruction No. 1. That instruction essentially stated that the existence or nonexistence of malice is for the jury to determine. The element of malice was defined in Court's Final Instruction No. 8. Court's Final Instruction No. 26 stated to the jury that all questions of law and fact were exclusively for its determination. All instructions are to be read together and construed as a whole. *Cockrum* v. *State*, (1968) 250 Ind. 366, 234 N.E.2d 479; 8A I.L.E. Criminal Law § 581 (1971). These instructions of the trial court, along with other instructions given which defined first degree murder, its lesser included offenses, and the State's burden of proof, adequately covered the principle set out in Defendant's Tendered Instructon No. 1.

Defendant's Tendered Final Instructon No. 2 stated, in short, that a person who kills another human being with malice is not guilty of murder if he acted in self-defense. Court's Final Instructons Nos. 16, 17, 18 and 19 instructed on self-defense. We have already noted that malice was adequately defined for the jury. The Appellant contends, however, that

no instruction given by the trial court related self-defense to malice. This was unnecessary. The application of self-defense to *every* element of the crime charged was clear under the instructions. Defendant's Tendered Final Instruction No. 3, which stated that the intention to take a life does not make a killing criminal when done in self-defense, was similarly redundant.

Defendant's Tendered Instructons Nos. 6 and 7 discussed the presumption of innocence. Instruction No. 6 stated that when witnesses were in irreconcilable conflict and the jury could not determine which witness to believe, the standard of beyond a reasonable doubt would require an acquittal. Instruction No. 7 stated that the jury may elect to disbelieve all the witnesses against the defendant and find him not guilty on the strength of the presumption of innocence. The trial court's instructions adequately covered these principles of law, though without phrasing which so favored the defense. Court's Final Instruction No. 2 set out the presumption of innocence and the duty of the jury to reconcile the evidence in the case upon the theory of innocence if it can be reasonably and consistently done. Court's Final Instruction No. 23 discussed impeachment and instructed the jury that it could disregard the testimony, in whole or in part, of witnesses it believed had testified falsely.

Finally, the Appellant urges error in the refusal of the trial court to give Defendant's Tendered Final Instruction No. 8. That instruction discussed the effect of evidence of the character of the accused which had been introduced at trial. Court's Instruction No. 41 was taken from the Appellant's tendered instruction to discuss the effect of the evidence in a more succinct and clear fashion. We think that the efforts of the trial court in that regard were successful.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 352 N.E.2d 726.