ROBERT A. JOHNSON *v.* STATE OF INDIANA.

[No. 976S281. Filed November 29, 1977.
Rehearing denied March 7, 1978.]

*Michael T. Conway*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *Elmer Lloyd Whitmer*, Deputy Attorney General, for appellee.

GIVAN, C.J.—Appellant was charged with first degree murder. Trial by jury resulted in a conviction for second degree murder. The record discloses the following facts: Appellant and the decedent, William Moore, had a disagreement which resulted in the appellant and one, James Herriman, going to Moore's apartment after the appellant had told Moore that he was going to "blow his brains out." Upon arriving at the apartment Moore and the appellant argued further, whereupon the appellant struck Moore in the face with his pistol. Moore's

wife handed him a towel to wipe the blood from his face. As she walked away she heard a shot. She turned around and saw appellant with a gun in his hand, pointed at Moore's head. Herriman did not see the appellant shoot Moore but observed appellant with the gun immediately after the shot.

During the course of the trial the State introduced the coroner's report of the death of William Moore. The appellant objected on grounds of hearsay and improper certification. He now claims it was reversible error for his objection to be overruled. This situation is governed by the recent case of *Eldridge* v. *State,* (1977) 266 Ind. 134, 361 N.E.2d 155, in which this Court held that TR. 44(A)(1), which is applicable to criminal trials through CR. 21, permits the admission of public records when they are attested as true and complete copies by the officer having legal custody or his deputy. In the case at bar the coroner's report was fully certified by the deputy coroner who attested that he was the lawful custodian of the records. The trial court needed no further proof of authenticity of the report. There was no error in its admission into evidence.

Appellant twice moved for, and was denied, a mistrial when he was observed in shackles by the jury. On appeal he claims this inflamed and unduly prejudiced the jury against him. The decision or whether a mistrial is to be granted rests within the sound discretion of the trial judge. His decision in this regard will be reversed only if an abuse of discretion is shown. *Ballard* v. *State,* (1974) 262 Ind. 482, 318 N.E.2d 798. In the case of *Jessup* v. *State,* (1971) 256 Ind. 409, 269 N.E.2d 374, this Court held:

". . . with the nature of the offense of which the appellant stood charged, we hold the trial court was well within the exercise of his sound discretion in permitting the Reformatory guards to bring the appellant into the court room in handcuffs and restraining chain and not to remove these items from appellant's person until he was safely inside the court room. . . . In addition to the fact that their restraint was justified under the trial court's sound discretion, it could hardly be argued that the jury received any additional

suggestion or inference from the fact that the persons appeared in the court room under heavy guard. We observe there is no merit to appellant's contention that he was seen in the halls of the court house by jurors at a time when he was handcuffed while being transported from the court room to the Reformatory. It would be unrealistic indeed especially in view of our above observations to hold that it was reversible error for jurors to observe the transportation of an inmate of a penal institution through a public hall in a shackled condition. We, therefore, hold the trial court did not err in permitting both the appellant and his witnesses to be brought into the court room handcuffed and chained." 256 Ind. at 412-13, 269 N.E.2d at 376.

In the case at bar appellant was charged with first degree murder. A reasonable jury could expect him to be in police custody. We fail to see how he was harmed by being seen in handcuffs. The trial court did not commit error in refusing to grant a mistrial for that reason.

Appellant's third contention is that the trial court erred in allowing the alternate juror to listen to the deliberations in the jury room, although he was instructed by the trial judge not to participate in the deliberations.

IC 1971, 35-1-37-4 forbids communication by the jury with any other person. However an alternate juror is in every respect a juror. *Turczi* v. *State*, (1973) 261 Ind. 273, 301 N.E.2d 752. He has been accepted through voir dire examination and has been with the jury throughout the trial of the case, receiving and being required to observe the various admonitions of the trial judge as to jury behavior. At any time during the trial or deliberations the alternate juror may immediately take the place of one of the original twelve jurors and function as fully as any other member of the jury. Thus he should not be considered as a stranger to the jury or an outsider who should not be permitted to be in the presence of the original twelve jurors during their deliberations. There is no more a presumption that the alternate juror would favor conviction than that he would favor acquittal. We therefore hold that the alternate juror may, in the discretion of the trial court, be sent with the

original twelve jurors to the jury room during their deliberation so long as the trial court properly instructs him that he is not to participate in the deliberation unless it becomes necessary for him to replace one of the original twelve jurors. Such an instruction was given in this case. It therefore was not error for the alternate juror to accompany the original twelve jurors when they entered upon their deliberation.

The final allegation of error is that the evidence is insufficient to support the verdict. First appellant claims there is no evidence to prove he actually killed William Moore. However appellant himself testified that he fired the shot which caused Moore's death, although he claims that it was an accident. Additionally, two other witnesses, Harriman and the deceased's wife, testified as to their observations of appellant immediately after the shot was fired. The coroner's report showed the cause of death to be a bullet wound. Appellant also argues there is a lack of evidence showing malice and purpose on the part of appellant. Malice and purpose may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or great bodily harm. *Booth* v. *State,* (1976) 265 Ind. 184, 352 N.E.2d 726. In the case at bar appellant was wielding the pistol and acting in a violent manner immediately before the shot was fired. Even though appellant claims the shot was fired accidentally it is within the province of the jury to believe or disbelieve whomever they choose. This Court will not disturb the jury's findings of fact so long as there is evidence in the record to support those findings. *Williams* v. *State,* (1976) 264 Ind. 441, 346 N.E.2d 579. The record in the case at bar contains sufficient facts as above recited to support the findings of the jury.

The judgment of the trial court is affirmed.

DeBruler and Prentice, JJ., concur; Hunter, J., concurs in opinion as to all issues, except the alternate juror issue; Pivarnik, J., dissents with opinion in which Hunter, J., concurs on the issue of the alternate juror only.

### DISSENTING OPINION

PIVARNIK, J.—I respectfully dissent from the majority opinion in this case. I would reverse this conviction on the basis of the trial court's order to the alternate juror to be present during deliberations of the jury.

The record shows that appellant objected to the trial court's directive to the alternate juror, and was overruled. The alternate juror then sat in on the entire final deliberations. Appellant did not ask the court for an examination of the jury after the verdict, to determine any possible prejudice. The instruction of the trial court to the alternate juror, at the time of the impanelling of the jury was as follows:

"You will retire with the jury. But unless, and until, we excuse a juror and you are directed to actively serve, you are not to vote or participate in the deliberations. You should, however, listen, so that should you be called upon to serve, you will have the benefit of the preceding discussions."

In essence, appellant's argument is that the presence of the alternate juror during the entire deliberations was inherently, and immeasurably, prejudicial. The argument is that even if there was no verbal communication between the alternate juror and the others, gestures and expressions of the alternate juror as he listened to the jury would have naturally followed, and subtly communicated the alternate's feelings. The state's argument, on the other hand, is that since appellant did not request an examination of the jury after the verdict, to determine any improper influences, no prejudice is shown.

In searching for a principle which governs the present situation, I would note first the early case of *Rickard* v. *State,* (1881) 74 Ind. 275. During the jury deliberations in that case, the bailiff at all times had access to the jury room and remained there during a large portion of time. Holding that the presence of the bailiff with the jury was reversible error, the court quoted from *The People* v. *Knapp,* (1879) 42 Mich. 267, 3 N.W. 927:

"Whether he [the officer] does or does not converse with them [the jury], his presence to some extent must operate as a restraint upon their proper freedom of action and expression. *When the jury retire from the presence of the court, it is in order that they may have an opportunity for private and confidential discussion,* and the necessity for this is assumed in every case. . . . The presence of a single other person in the room is an intrusion upon this privacy and confidence, and tends to defeat the purpose for which they are sent out. * * * In their private deliberations the jury are likely to have occasion to comment with freedom upon the conduct and motives of parties and witnesses, and to express views and beliefs that they could not express publicly without making bitter enemies.

". . . We have said enough already to show that it is not conversation alone that is mischievous; the mere presence of the officer within the hearing of the jury is often quite as much so. In one case what he would say might influence the verdict; in another, what his presence might restrain jurors from saying, might accomplish the same result." *Rickard* at 277-78 (emphasis added).

I would hold that in view of this necessity for confidentiality and privacy in the jury room, the presence of an alternate juror within the entirety of the deliberations is an irregularity contrary to the common law system of a jury trial, and reversible error. *See generally State* v. *Bindyke,* (1975) 288 N.C. 608, 220 S.E.2d 521. Our statutes provide for the common law jury of twelve in criminal cases, Ind. Code § 35-1-30-1 (Burns 1975), and state that when the jury retires for deliberation, the officer of the court shall "not permit any person to speak or communicate with them," Ind. Code § 35-1-37-4 (Burns 1975). While Ind. R. Tr. P. 47 (B) states that an alternate juror "shall have the same functions, powers, facilities, and privileges" as regular jurors, and shall be discharged *after* the jury brings in its verdict, this language does not change the fact that an alternate juror is a stranger to the deliberations after they begin. The only reason the alternate is not to be discharged immediately is that it may be necessary to substitute him for a regular juror.

It is the alternate juror's lack of a right to deliberate, and his lack of a right to vote on a verdict which defines him as a stranger to the privacy of final deliberations. The case of *Turczi* v. *State,* (1973) 261 Ind. 273, 301 N.E.2d 752, which is relied upon by the majority and which construes Ind. R. Tr. P. 47(B), does not support the proposition that an alternate is in every respect a juror. That case dealt with discussions of an alternate with the jury *before* submission, and held that in view of the sanctity and finality of verdicts, alternates who have been privy to the jury's conduct because they have "taken the same oath as the regular jurors and performed all functions, *except the final deliberation"* cannot impeach a verdict. *Id.* at 276, 301 N.E.2d at 753. Absent the right to vote and deliberate, which the alternate in the present case did not have and could not have had, he became a stranger at the time of submission. The trial rule's statement that an alternate has the "same functions, powers, facilities, and privileges" as regular jurors cannot in any way be construed to give him the right to deliberate and vote. If that were the case he would be a regular juror rather than an alternate juror, and the trial rule would have the effect of rewriting our statute, which defines a jury in Indiana as *twelve.* Thus, what we have in this case is a deliberation of a jury of twelve in the presence of an observer and onlooker. This is the only possible way to characterize these proceedings under any construction of the applicable rules, statutes and decisions.

Because of the gravity of the intrusion into the jury's privacy here, I do not believe that the trial court's instruction to the alternate juror would have been sufficient to cure error, even if it can be presumed that the instruction was followed. The instruction was to the effect that the juror should not speak while present during deliberations, but should listen. As noted in *Rickard,* the mere presence of a third person during deliberations, without more, may inhibit the free flow of discussion in the jury room. Thus, the court's

instruction did not, and could not address the nature of the problem. Despite similar instructions, other courts have found that the presence of an alternate juror during final deliberations was reversible error. *See, e.g., United States* v. *Virginia Erection Corp.*, (4th Cir. 1964) 335 F.2d 868; *People* v. *Bruneman*, (1935) 4 Cal. App.2d 75, 40 P.2d 891; *Patten* v. *State*, (1968) 221 Tenn. 337, 426 S.W.2d 503.

I am aware of no authority which has simply held, as does the majority in this case, that the presence of an alternate in the jury room was proper and without possibility of prejudice. There is one case which held that an alternative remedy to reversal for a new trial would be a remand for an evidentiary hearing, to determine any possible prejudicial effects the presence of the alternate had upon the deliberations. *United States* v. *Allison*, (5th Cir. 1973) 481 F.2d 468, *cert. denied*, 416 U.S. 982, 94 S.Ct. 2383, 40 L.Ed.2d 759, *hearing aff'd* 487 F.2d 339. This case, however, was factually different from the present one, in that the defendant raised no objection to the alternate's presence. Further, the *Allison* case at least recognized the possibility of prejudice inherent in such a situation. I would agree, however, with the Supreme Court of North Carolina in *State* v. *Bindyke*, (1975) 288 N.C. 608, 220 S.E.2d 521, that the evidentiary hearing alternative is both impractical and against public policy. It is impractical because no adequate standards can be devised for determining whether the alternate's presence prejudiced the jury in the subtle ways warned of in *Rickard*. It is against public policy because the defendant, at the hearing, would have to question both the alternate juror and the regular jurors about what happened during deliberations. Such proceedings would thus in themselves be an invasion of the confidentiality and privacy of the jury process. *Cf. Hill* v. *State*, (1977) Ind. App., 363 N.E.2d 1010.

Finally, I also agree with the following language from the *Bindyke* case, 220 S.E.2d at 533;

"There is, however, no substitute for common sense, and the foregoing rule has no application where the alternate's presence in the jury room is inadvertent and momentary, and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function as a separate entity."

In addition to these "inadvertent and momentary" presences of the alternate juror in the jury room before the functioning of the jury, there are cases where the alternate is present for a short time because he is being substituted for a regular juror during deliberations. *See Pinkston* v. *State*, (1972) 258 Ind. 672, 284 N.E.2d 767; *Smith, Peak* v. *State*, (1960) 241 Ind. 311, 170 N.E.2d 794. An evidentiary hearing to determine possible prejudice is an adequate remedy in such cases, because the gravity of the irregularity is not great enough to create the problems of practicality and policy that would be involved in holding a hearing in the present situation.

In the present case, however, I see no alternative to outright reversal. It is not a matter of presuming that the alternate would favor either conviction or acquittal. Rather, it is a matter of recognizing the possibility of prejudice arising when the jury deliberates in the presence of an observer who is in no sense a juror at this stage, and a matter of recognizing that this possibility can be cured in no way, consistent with the principle of privacy of the jury, other than reversal.

Hunter, J., concurs.

NOTE.—Reported at 369 N.E.2d 623.