Steven W. SOUTHARD, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 1–181A3.

Court of Appeals of Indiana, First District.

June 23, 1981.

Rehearing Denied July 29, 1981.

Transfer Denied Oct. 19, 1981.

Michael A. Howard, Smith, Pearce & Howard, Noblesville, Russell D. Millbranth, Winamac, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

This is an appeal by defendant-appellant Steven W. Southard (Southard) from his conviction, following a trial by jury, of the offense of voluntary manslaughter, Ind. Code 35–42–1–3 (Supp.1980), in the Boone Circuit Court.

We affirm.

## STATEMENT OF THE FACTS

The evidence most favorable to the state is as follows. On February 17, 1980, the decedent, John Cicco (Cicco), and his wife drove to a Holiday Inn near Lebanon, Indiana. Some time later, Cicco entered the Holiday Inn and collapsed from four gunshot wounds; he died shortly afterwards in a hospital. The police, having been informed of Southard's presence at the scene, put out a bulletin and Southard was later apprehended by the LaPorte County police. In Southard's car police found the following items: a fully loaded .32 caliber colt revolver and 90 grams of cocaine, both of which Southard had attempted to hide; $1,114.80 in cash; several unused cartridges; and three spent cartridges, one of which had

misfired. The car and Southard were bloodstained. It was determined that Cicco's death resulted from four bullets fired variously from a range of one to twelve inches. Ballistics tests revealed that the bullets had been fired from Southard's revolver.

Southard made a statement to the police shortly after his arrest which was admitted into evidence. In that statement he said that he had gone to Lebanon to purchase one-half ounce of cocaine from Cicco, and had taken along $1,000 to pay for it. The cocaine was opened with Southard's knife so he could sample it, which he did. There were two bags of cocaine present which weighed a total of 90 grams. Southard stated that Cicco pulled a gun and said that he was going to take the $1,000 for a prior debt owed him by Southard. Southard pushed Cicco's gun down and pulled out his own gun, the aforementioned colt revolver. Cicco grabbed Southard's gun and it fired, striking Cicco. They continued to struggle and the gun went off several more times. Cicco then jumped out of the car and ran, taking his gun but leaving the cocaine behind. Southard was scared, loaded his revolver, and took off for home as fast as he could.

Southard's testimony at trial and a video-taped statement taken the day following the shooting related an account of the altercation that differed significantly from that contained in his original statement. An account of that evidence follows. Southard had known Cicco for about two and one-half years, and had purchased cocaine from him on six or eight occasions. In the summer of 1979, Southard obtained from Cicco for resale two ounces of cocaine for $3,400 on credit. Southard tried unsuccessfully to sell it. He was pressed by Cicco for the money, and had eventually whittled the sum owed to $1,700. In late October or November, 1979, Cicco solicited Southard to sell and transport cocaine for him. Upon Southard's refusal, Cicco made threats to his, and to his fiancee Kathy's safety. They quarrelled. They met again in January, 1980, whereupon Southard paid Cicco $600, and Cicco renewed his efforts to get South-

ard to sell and transport cocaine. The next time they met was on the day of the killing, February 17, 1980. Cicco had telephoned Southard and told him he wanted the balance of the debt, $1,100. They agreed to meet at the Holiday Inn. Cicco entered Southard's car and Southard told him he had the money for him. Southard declined Cicco's renewed offer to sell cocaine, or to use some there. He did loan Cicco his knife to open the package of cocaine and show it to him. Southard told Cicco he wanted nothing more to do with the cocaine trade. Cicco hinted some harm might befall Kathy, Southard's girlfriend. Southard was carrying a .32 caliber colt revolver which he had recently acquired because he was afraid of Cicco. He pulled out the gun, pointed it at Cicco and told him to get out of the car. Cicco was unarmed. Cicco struck Southard in the head and then went for the gun. They struggled for the gun and it went off, but he did not know how many times. Cicco got out of the car and ran for the motel. Southard reloaded the gun and started home immediately. When the police stopped him he attempted to hide the cocaine and the gun.

## ISSUES

Southard raises four issues for review. We have consolidated these into three issues and restate them as follows:

I. Whether the trial court erred in excluding evidence of drug transactions between the decedent, Cicco, and third parties.

II. Whether the trial court erred in refusing to give an instruction on circumstantial evidence where part of the evidence was circumstantial and part direct.

III. Whether the evidence was sufficient to sustain the conviction.

## DISCUSSION AND DECISION

Southard has interposed the defenses of self-defense and accident as justification for his shooting of Cicco. In order to aid in our analysis, we shall briefly discuss the nature

and elements of those defenses before considering the issues raised by Southard.

The defense of self-defense is codified at Ind.Code 35–41–3–2 (Supp.1980). That section states in relevant part:

"Use of force to protect person or property

(a) A person is justified in using reasonable force against another person to protect himself . . . from what he reasonably believes to be the imminent use of unlawful force. *However, a person is justified in using deadly force only if he reasonably believes that that force is necessary to prevent serious bodily injury to himself* . . . .

\* \* \* \* \* \*

(d) Notwithstanding subsections (a), (b), and (c) of this section, a person is not justified in using force if:

(1) *he is committing*, or is escaping after the commission of, *a crime*;

(2) *he provokes unlawful action by another person*, with intent to cause bodily injury to the other person; or

(3) he has entered into combat with another person *or is the initial aggressor*. . . ." (Emphases added.)

The elements of the defense of homicide by accident or misadventure were first delineated in Indiana in *Gunn v. State*, (1977) Ind.App., 365 N.E.2d 1234, 1238, and are that:

1. The killing must be unintentional, or without unlawful intent or evil design on the part of the accused,

2. the act resulting in death must not be an unlawful act,

3. nor an act done recklessly, carelessly, or in wanton disregard of the consequences."

This court further determined in *Gunn* that the defenses of self-defense and accident are not inconsistent as a matter of law, and may be raised simultaneously.

Against this background we proceed to review Southard's allegations of error.

*Issue I.   Exclusion of evidence*

Southard testified that at a time prior to February 17, 1980, Cicco came to his home and there they discussed privately the $1,700 Southard owed him. Cicco told Southard he needed the money badly. Southard attempted at trial to relate a story Cicco had told him during their conversation concerning an event that occurred in Miami, Florida. Earlier in the trial, the State filed a motion in limine, which was granted, to exclude any evidence of Cicco's drug dealings with third parties. The State objected to this evidence on the bases that it was hearsay and that it was within the parameters of the evidence sought to be excluded in the motion in limine.

In an offer to prove by further interrogation, outside the presence of the jury, Southard related Cicco's account of his Miami problem which caused him to need the money. Some two weeks prior to their meeting at Southard's home, Cicco had flown to Miami, and at the airport was questioned by security police, ostensibly because of his appearance. He became scared and flushed a half-pound of cocaine down a toilet at the airport. Cicco said that he was not going to fly down to Miami anymore to pick up cocaine; instead, he planned to have someone else drive to Miami, meet him, and drive the cocaine back. He offered Southard $1,000 to do this. Southard declined that job, and declined to sell any more cocaine for Cicco.

The trial court considered the evidence of Cicco's Miami confrontation not to be relevant and excluded that evidence. The court, however, permitted Southard to testify that: (1) he knew Cicco needed the money dearly to pay a debt, (2) Cicco attempted to persuade Southard to sell drugs or deal in drugs, (3) Cicco threatened to harm Southard and his girlfriend if he did not agree to deal in cocaine, and (4) Cicco offered Southard $1,000 credit on his debt to transport cocaine.

Southard's challenge to the exclusion of the evidence is consistent with the basic premise of his defense, here as well as under Issue III, *infra*, which is essentially as follows: Cicco was a drug dealer, was desperate for money, was dangerous, and had

threatened to harm Southard and his girlfriend. Therefore, Southard was afraid and had a right to take a gun to the meeting and use it in self protection.

■ The State objected to the proffered testimony on the grounds of hearsay and relevancy. We agree with Southard that the evidence was not inadmissible hearsay, because it was not offered to prove the truth of Cicco's account of his experiences in Miami but rather to show what Cicco had said to Southard.

Southard relies on *Nuss v. State*, (1975) 164 Ind.App. 396, 328 N.E.2d 747, and *Gunn*, in support of his assertion that all circumstances known to him regarding Cicco were relevant to the issue of the reasonableness of Southard's apprehension of harm. In *Nuss*, this court reiterated the right of an accused who proceeds under a theory of self-defense to " 'prove every fact and circumstance known to him and connected with the deceased which was *fairly calculated to create an apprehension for his own safety.*' " 328 N.E.2d at 754, quoting from *Boyle v. State*, (1884) 97 Ind. 322, 326 (Emphasis added.) The disputed evidence in *Nuss* and *Gunn* each consisted of threats made by the decedent on the life of the accused which were communicated by the decedent to third parties and ultimately to the accused. The evidence in those cases was found to be relevant to the proper assessment of the reasonableness of the accused's apprehension of harm.

■ As we view the facts contained in the offer to prove against the background of the entire case, we are unable to discover any threat contained or implied in the recital of the Miami excursion. The court admitted evidence of all dealings between Cicco and Southard, threats, debts, solicitation, and Cicco's need of money. We agree with the trial court's determination that evidence of the details of Cicco's Miami misadventure was not relevant to Southard's claim of self-defense.

■ As to the defense of accident, we think Southard's relevancy argument completely misses the mark. The accident de-fense goes only to the firing of the gun, i. e., that the shooting itself was accidental. Southard would have us accept the notion that his understanding of Cicco's financial straights negated any reckless or careless action on his part in anticipating trouble at the meeting and taking along the gun. Such knowledge is not pertinent, however, to the alleged accidental firing of the gun.

*Issue II. Circumstantial evidence instruction*

■ The court gave its instruction No. 28, a circumstantial evidence instruction, as one of its final instructions. The language of that instruction was taken from Indiana Pattern Jury Criminal Instruction No. 12.-01. The court excluded the paragraph designed by the pattern instruction to be given when *all* of the evidence of guilt was circumstantial. That paragraph reads as follows:

"When proof of guilt is by circumstantial evidence *only,* you should not find the defendant guilty, unless the facts and circumstances proved exclude every reasonable theory of innocence." (Emphasis added.)

Southard claims that this omission was reversible error.

In *Ball v. State*, (1980) Ind.App., 406 N.E.2d 305, we reviewed the Indiana cases relative to this instruction, which uniformly hold that it is not error to refuse to give the above-quoted instruction where some of the evidence is direct and some evidence is circumstantial. In the case at bar, much of the evidence was direct, including among other things, a videotaped statement by Southard and his own testimony at trial, which purported to give the factual account of the crime. Therefore, the trial court did not err in refusing to give that portion of the pattern instruction.

*Issue III. Sufficiency of the evidence*

Southard was charged with murder under Ind.Code 35–42–1–1 (Supp.1980), but was convicted of the lesser included offense of voluntary manslaughter, Ind.Code 35–42–1–3 (Supp.1980), which is defined as follows:

"(a) A person who knowingly or intentionally kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."

Southard does not deny shooting and killing Cicco, but advances the two defenses of self-defense and accident. He urges that the evidence mandates the trier to believe that he had been lured into an illicit narcotics transaction, and upon his attempts to abandon it, was threatened by Cicco. He argues that he went to the meeting with Cicco fearful, he took the gun to protect himself, and that such fear and precaution were reasonable. He further contends that the evidence required the jury to find that the shooting and killing of Cicco was accidental in the struggle over the gun. We disagree.

■ The theories of self-defense and accidental homicide are not inconsistent as a matter of law and may be raised simultaneously. *Gunn.* The theory of self-defense embraces intentional as well as accidental killings. Thus self-defense is available to an accused who accidentally kills his assailant while asserting reasonable force to repel the assailant. *See, e. g. McDermott v. State,* (1883) 89 Ind. 187. Any question whether, in light of the facts, the two theories conflict goes to the weight to be given the facts supporting each theory as determined by the jury.

While Southard's rambling and confusing argument under the sufficiency issue does not state it in this fashion, his only cognizable argument under any reasonable view of the facts is that he unintentionally and accidentally killed Cicco while defending himself with reasonable force and methods. Accident, therefore, depends for its vitality here on the validity of the defense of self-defense.

We have quoted above the pertinent provisions of the statutory defense of self-defense, Ind.Code 35–41–3–2, and the elements of the defense of accident or misadventure as contained in *Gunn.*

Matters relative to the burden of proof when self-defense is in issue, and the standard of review on appeal, are set forth in *Hanic v. State,* (1980) Ind.App., 406 N.E.2d 335, a battery case in which the defendant interposed the defense of property as justification for his act. Judge Staton wrote:

"An examination of self-defense cases in Indiana reveal the following:

(1) In assault and battery cases where self-defense is claimed, even though of a negative character, the burden is on the State to disprove self-defense. *Harris v. State* (1978), Ind., 382 N.E.2d 913; *Banks v. State* (1971), 257 Ind. 530, 276 N.E.2d 155.

(2) This burden, however, can be met not only by rebuttal but by affirmative showing. The State need not specifically introduce evidence to refute the elements of self-defense, but may accomplish its burden by the evidence in its entirety in the State's case in chief. *Harris, supra; Hester v. State* (1978), [267] Ind. [697], 373 N.E.2d 141; *Banks, supra.*

(3) The trier of fact must look to the situation from the defendant's viewpoint, but it need not believe the defendant's evidence. *Harris, supra; Starkey v. State* (1977), 266 Ind. 184, 361 N.E.2d 902; *Williams v. State* (1974), 262 Ind. 382, 316 N.E.2d 354."

406 N.E.2d at 339.

■ The evidence most favorable to support the conviction reveals that Southard and Cicco met to transact an illicit cocaine sale. Southard drew a gun on the unarmed Cicco, who had made no prior aggressive movement toward Southard, and shot him four times with a six-shot double action revolver, the fifth shot being a misfire. After Cicco fled the car, Southard immediately reloaded the revolver and hastened away toward his home, taking with him the $1,000 he had brought along, and Cicco's 90 grams (over three ounces) of cocaine, worth a considerable amount of money. Upon being stopped by the police, Southard at-

tempted to secrete the gun and the cocaine. There was no evidence that Southard attempted to aid the mortally wounded Cicco. The intent to kill may be inferred from evidence that a mortal wound was inflicted upon an unarmed person with a deadly weapon in the hands of the accused. *Williams v. State*, (1969) 252 Ind. 154, 246 N.E.2d 762. The jury was further entitled to consider Southard's flight, his attempts to hide the gun and cocaine upon his apprehension, and his seriously conflicting accounts of the episode as evidence of consciousness of guilt. *Matthew v. State*, (1975) 263 Ind. 672, 337 N.E.2d 821; *Von Hauger v. State*, (1970) 255 Ind. 666, 266 N.E.2d 197; *Bush v. State*, (1980) Ind.App., 401 N.E.2d 796.

 Relative to Southard's defenses of self-defense and accident, there was no indication that he perceived himself to be in *imminent* danger as required by Ind.Code 35–41–3–2(a). At most he perceived from Cicco's demeanor and statements threats to himself and his girl friend (who was not present) at some indefinite future time. There was no evidence that the unarmed Cicco had the present ability to carry out his threats. Further, self-defense is not available under Ind.Code 35–41–3–2(d)(3) where the accused is the initial aggressor. The evidence indicated that Southard drew the gun first on the unarmed Cicco, thus becoming the initial aggressor.

We do not think the jury was required to accept Southard's claim that Cicco's death was the consequence of an accident. It is not unreasonable to reject the notion that four discharges from a double action revolver—five considering the misfire—even in the course of struggle, were accidental.[1] A more plausible interpretation would consider Southard's actions as reckless at best, and that determination forecloses the possibility of accident under *Gunn*. We conclude that the evidence was sufficient to support the conviction.

1. Without taking judicial notice of the fact, we note the jury was entitled to consider that a double action revolver requires substantial effort to effect discharge when being fired in sequence without cocking it.

Finding no reversible error, we affirm the judgment of the trial court in all respects.

Affirmed.

ROBERTSON and RATLIFF, JJ., concur.