JOHNNY HILL v. STATE OF INDIANA.

[No. 2-1076A396. Filed June 2, 1977. Rehearing denied August 5, 1977.]

*Timothy J. Burns, Mullin, Foley & Gilroy,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Hill appeals his conviction for theft of a motor vehicle, a violation of the Offenses Against Property Act, IC 35-17-5-3 (Burns Code Ed. 1975). Because we determine reversible error to have been committed, we treat only one assertion made by Hill and do not address four other allegations of error.

When the case was submitted to the jury, the trial court permitted the alternate juror to retire to the jury room with the deliberating jurors. The court gave the following admonition through its instruction 4F:

"Alternate juror Mary Elen O'Donell, you will retire with the jury. But unless, and until, we excuse a juror and you are directed to actively serve, you are not to vote or participate in the deliberations. You should, however, listen, so that should you be called upon to serve, you will have the benefit of the preceding discussions."

Ind. Rules of Procedure, Trial Rule 47(B) provides for the impanelling of alternate jurors to replace regular jurors who, "prior to the time a jury returns its verdict, become or are found to be unable or disqualified to perform their duties. . . . An alternate juror who does not replace a regular juror shall be discharged after the jury brings in its verdict."

The Civil Code Study Commission comments reveal that prior Indiana law was retained and that it is contrary to the federal rule which provides for the discharge of alternate jurors when the jury retires. The Commission cited *Smith, Peak* v. *State* (1960), 241 Ind. 311, 170 N.E.2d 794 for the proposition that if a juror dies or becomes ill *during deliberations,* the alternate juror may be substituted. A statute construed in that case, Ind. Ann. Stat. § 4-7122 (Burns 1968), provided that alternate jurors "shall remain in the custody of a bailiff in some convenient place to be designated by the

court, shall not be allowed to talk or communicate with any person or persons with reference to the cause, and shall be discharged when the original jurors are discharged."[1] *See* 3 HARVEY, INDIANA PRACTICE, 350-353 (1970). The present Trial Rule, 47(B), is silent as to the custody, location and function of alternate jurors from the time the regular jurors retire to deliberate to the time that the regular jurors return a verdict.

Neither party was able, nor are we, to find an Indiana case in which the presence of the alternate in the jury room during deliberations has been at issue. Hence we have examined Indiana cases which speak to the proper means of juror substitution and to the proper conduct of jury room deliberations.

We held in *Landers* v. *State* (1975), 165 Ind. App. 221, 331 N.E.2d 770, 777 that due process was not denied by the substitution of an alternate juror for a regular juror during the course of the trial but prior to jury deliberation.

In *Pinkston* v. *State* (1972), 258 Ind. 672, 284 N.E.2d 767, a substitution was made after the commencement of deliberations. The Indiana Supreme Court affirmed a trial court determination that the alternate juror had not been exposed to improper influences and held that an evidentiary hearing had by the trial court to determine if there was in fact any improper influences was sufficient. The court stated that where the proceedings appear to have been irregular, the burden is upon the appellant to show he was thereby harmed.

In an earlier case where the jury had already begun deliberation, one regular juror became ill in a restaurant and was sent home. An alternate juror was substituted by the trial court and the court found it irregular that an alternate juror was sent to the jury room before the regular juror had been formally discharged by the court. But again no prejudice, and therefore no reversible error, was discernible to the court.

---

1. This provision was originally carried as § 4-3325 in Burns Ind. Ann. Stat. (1946), and was repealed by Acts 1969, ch. 191, § 3.

However, it is important to note that at no time were there more than twelve jurors in the jury room during the course of deliberations. *Smith* v. *Smith, supra,* 241 Ind. at 326, 170 N.E.2d at 801.

These cases suggest that resulting prejudice to the defendant must be demonstrated before an irregularity in the substitution of jurors will constitute reversible error. On the other hand, none of these cases dealt with an intrusion or disturbance of the sequestered deliberations of the regular jurors. Where such intrusion has occurred, Indiana has applied a different standard, one of presumed prejudice, wherein the burden is placed on the appellee to satisfy the reviewing court that no harm or prejudice in fact resulted.

Indiana law has permitted neither judge nor bailiff to communicate with the jury in the jury room. *Conrad* v. *Tomlinson* (1972), 258 Ind. 115, 279 N.E.2d 546; *Fish and Another* v. *State* (1859), 12 Ind. 563; *Hall* v. *State* (1856), 8 Ind. 439; *Laine* v. *State* (1972), 154 Ind. App. 81, 289 N.E.2d 141. In *Conrad* v. *Tomlinson, supra,* the Indiana Supreme Court held:

> "When an irregularity such as this occurs harm will be presumed, and if the irregularity is not explained, a reversal of the judgment should follow. However, if an explanation for the alleged misconduct is offered, and if this court is satisfied that no harm or prejudice resulted, then the judgment of the trial court will not be disturbed." Id. at 551. *See also Frasier* v. *State* (1974), 262 Ind. 59, 312 N.E.2d 77, 81, *cert. denied* 419 U.S. 1092.

In *Laine* v. *State, supra,* the affidavit of an erring bailiff provided a record of the questioned exchange which transpired in the jury room during deliberations, unlike the record provided in the *Conrad* v. *Tomlinson* case. It was not enough however that the bailiff's intrusion was prompted by good intention. The court stated:

> "Such is not enough. Such an unexplained irregularity must result in the reversal of the conviction. We do not

question the purity of the motives of the Bailiff or the members of the jury in this case. However, the event occurred at a highly sensitive point in time during the jury's deliberation. There is and there must be a certain quality of secular sacredness about the deliberations of the jury. . . . The sensitiveness and the sanctity of the jury deliberations are reflected in a great number of cases. . . . The sanctity of the jury trial is well reflected in one of the statutes pertaining to the duties of the jury bailiff. In IC 1971, 34-1-21-4, Ind. Ann. Stat. § 2-2015 (Burns' 1968), in pertinent part, it is provided: '. . . the officer having them under his charge shall not suffer any communication to be made to them or make any himself, except to ask them if they have agreed upon the verdict. . . .'" 289 N.E.2d at 144.

It has not been heretofore decided in Indiana that the sensitiveness and the sanctity of jury deliberations is similarly threatened by the presence of alternate jurors during deliberation. Therefore, Hill directs us to California case law. In *People* v. *Adame* (1973), 36 Cal. App.3d 402, 111 Cal. Rptr. 462, the court relied on several persuasive arguments in reaching its decision.

"In *People* v. *Britton* (1935), 4 Cal.2d 622, 52 P.2d 217, our Supreme Court held that it was reversible per se to permit an alternate juror to retire to the jury room with the regular jury during deliberations even though the trial court instructed the alternate juror that she should not express any opinion or participate by word or action in the deliberations. . . . The majority expressly approved the conclusion reached in *People* v. *Bruneman, supra,* 4 Cal. App.2d 75, 40 P.2d 891, where it was held that the presence of alternate jurors in the jury room constitute an invasion of the defendant's right to trial by jury as guaranteed by article I, section 7 of the State Constitution.

. . . The *Bruneman* Court noted that the right of trial by jury as guaranteed by the State Constitution is the right as it existed at common law, which is a jury composed of twelve persons [citations omitted], and stated that the procedure followed by the trial court in effect resulted in a trial by 14 jurors.

In holding that the mere presence of the alternate jurors in the jury room was a substantial invasion of the defendant's constitutional right to a jury trial, the *Bruneman* court relied on several cases from other jurisdictions in-

volving the presence of a stranger or court officer in the jury room. [Quotations from English, Michigan and Wisconsin cases omitted.]

. . . . These cases in substance declare that it is the very sanctity of the jury room with only the regular jurors present which is protected by article I, section 7 of the State Constitution." 111 Cal. Rptr. at 464.

The *Adame* Court, noting that California is not alone in holding that the unauthorized presence of an alternate during jury deliberations is reversible error, cited additional cases from Pennsylvania and New York as well as from federal jurisdictions. *See also Brigman* v. *State* (1960), Okla. Crim. 350 P.2d 321; 84 ALR 2d 1288; 10 ALR Fed. 185.

The Constitution of the State of Indiana, Art. I, § 19, which provides for trial by jury in criminal causes, IC 1-1-2-1 (Burns Code Ed. 1972) by which Indiana embraces English common law, and IC 35-1-30-1 (Burns Code Ed. 1975) which provides for a twelve-member jury in criminal cases, will not permit us to uphold an invitation to trial by a jury of thirteen or more,[2] notwithstanding some degree of efficiency and expediency which might be desirable. *See Benadum* v. *State* (1914), 182 Ind. 510, 107 N.E. 8.

IC 35-1-37-4 (Burns Code Ed. 1975), bespeaks that degree of protection which the deliberation process is deemed to merit:

"After hearing the charge, the jury may either decide in court or retire for deliberation. They may retire under the charge of an officer, who must be sworn by the clerk to keep them together in some private and convenient place, and furnish them food as directed by the court, and not permit any person to speak or communicate with them, nor do so himself unless by order of the court, or to ask them whether they have agreed upon their verdict, and return them into court, when so agreed, or when ordered by the court. The officer shall not communicate to any person the state of their deliberations; and if he does he shall be pun-

---

2. Ind. Rules of Procedure, Trial Rule 47(B) allows the impanelling of as many as six alternate jurors.

ished as for a contempt, and shall not be further employed as a bailiff in such court." Id.

In holding that the number of persons privy to the jury deliberative process may not lawfully exceed twelve, we do not imply that the twelve-member regular jury panel is an immutable part of our system of criminal or civil justice. The Indiana Rules of Procedure, in fact, permit in civil cases that:

> "The parties may stipulate that the jury shall consist of any number less than twelve [12] at any time before the jury is selected or that a verdict or a finding of a stated majority of the jurors shall be taken as the verdict or finding of the jury at any time before the verdict has been announced." TR. 48.

Innocuous as it may seem in the case of a well-intentioned bailiff or in the case of an alternate juror being readied to carry on deliberations in the event that a regular juror become disqualified, erosion of the safeguards which surround this critical phase of decision-making may not be undertaken precipitously.

The State urges that because Hill has failed to show that he was prejudiced by the presence of the alternate in the jury room, he has failed to show cause for reversal. It is the very seclusion and sanctity which enshrouds the jury room which prevents us from reaching a reliable conclusion that prejudice did or did not result. The cases cited in which it has been held that the defendant must demonstrate resulting prejudice are cases in which the alleged misconduct or the irregularity occurred extraneous to actual jury deliberation. The posture of the present case places it in the class of cases wherein a presumption of prejudice must be deemed to arise.

Although the alternate had been admonished to refrain from participation, (and we have no reason to think that she did not heed the instruction), there is simply no way to determine in a given case whether an alternate did in fact participate or influence the deliberating jurors in some way. Where deliberation is highly

charged or sensitive or subject to vacillation, it is possible that an inadvertent utterance or gesture of the alternate would tip the balance. On the other hand, the deliberations may go unaffected by the presence of alternate jurors, and alternate jurors, unlike bailiffs or other court officers, have all the attributes of regular jurors. Alternates are selected, qualified, examined and sworn in the same manner as regular jurors and are also subject to challenge. *Landers* v. *State, supra,* at 777. Yet, ultimately the crux of the problem is in the proof. Here we are presented no affidavit or explanation by other means to rebut a presumption of prejudice, and we are hard pressed to perceive how reliable and acceptable evidence could be adduced for purposes of rebuttal (or for purposes of showing prejudice, if it were required). A jury's verdict may not be impeached by testimony of the jurors. Such a practice has been said to create an intolerable situation since no verdict would ever be lasting or conclusive. *Stinson* v. *State* (1974), 262 Ind. 189, 313 N.E.2d 699, 704; *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817, 821.

Furthermore, if alternate jurors were to be considered third parties subject to inquiry, then not only would the jury room doors be thrown open, but the finality of jury verdicts would be jeopardized. The way would then be paved for alternates to become the tools of corruptive attacks upon jury verdicts. Since we cannot create a matrix for such abuse of the judicial system, an insurmountable burden of proof arises. Our decision that prejudice must be presumed is thereby confirmed, and we are inclined to believe that the allowable means of proof makes this particular irregularity intrinsically prejudicial.

The possibility of improper influences upon jury deliberations and the virtual impossibility of proving harm by conduct taking place in the secrecy of the jury room compels our conclusion. And these considerations outweigh the possible expediency gained by an alternate juror's knowledge of the nature and substance of deliberations by the regular jurors.

Reversed and remanded for a new trial.

Buchanan, P.J., concurs.

Staton, J. (participating by designation), concurs.

NOTE.—Reported at 363 N.E.2d 1010.