**Bret SISSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 08A04–9805–CR–258.

Court of Appeals of Indiana.

May 10, 1999.

Transfer Denied July 21, 1999.

Susan K. Carpenter, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Defendant–Appellant Bret L. Sisson ("Sisson") appeals his conviction for burglary, a Class B felony. Ind. Code § 35–43–2–1.

We reverse.

### ISSUES

Sisson raises two issues, one of which we find dispositive and restate as follows: Whether Sisson's conviction should be overturned because it was based on inherently contradictory and equivocal testimony.

## FACTS AND PROCEDURAL HISTORY

On February 27, 1997, three houses in Carroll County were burglarized: the Payne house, (hereinafter alternately referred to as the first house); the Marcellino house (hereinafter alternately referred to as the second house); and the McCain house (hereinafter alternately referred to as the third house.) At the Payne house, a rock had been thrown through a glass door, but no items were identified as missing. At the Marcellino house, the door had been kicked in and some jewelry and other items were identified as missing. At the McCain house, the door had been kicked in and some guns were identified as missing.

On March 1, Carroll County Deputy Sheriff Tobe Leazenby received a call from Detective Jesse Huggins of the Logansport Police Department. Detective Huggins told Deputy Leazenby that Brad Bell ("Bell") had been arrested for an armed robbery, and that Bell had told police that he had been involved in some burglaries in Carroll County. Deputies Leazenby and Steve Mullin went to Logansport to obtain a statement from Bell. Bell admitted that he had committed the Carroll County burglaries, and he stated that Sisson was with him and participated in the crimes.

Sisson was arrested that evening. At the time he was arrested, Deputy Leazenby watched Sisson put on a pair of Nike tennis shoes, the soles of which appeared to match a casting made of a footprint found outside the McCain residence. The shoes were taken to Sergeant Frank Aldrich at the Indiana State Police Lab. Sergeant Aldrich, an expert in the area of shoe print examinations, compared Sisson's shoes to the casting and determined that one of the cast impressions could have been made by Sisson's shoe because the size and sole patterns matched. He could not, however, identify any individual characteristics which either identified or eliminated Sisson's shoes as having made the impression.

Sisson was charged with three counts of burglary and with being an habitual offender. Bell, who had pled guilty to the Marcellino burglary only, testified against Sisson. During Sisson's trial, Bell recounted two opposing versions of the events surrounding the burglaries. First, Bell testified on direct examination that Sisson was with him and participated in all three burglaries, and that Sisson entered each of the three homes that were burglarized. Bell then recanted that testimony and stated that Sisson was with him only for the Payne burglary but not for the Marcellino and McCain burglaries. Bell stated on both cross and redirect that after the Payne burglary, Sisson did not want to break into any other homes so Bell took him to a service station where Sisson's sister worked. Bell further testified that he returned alone to commit the Marcellino burglary, then drove to the McCain house. According to this version, before Bell committed the McCain burglary he returned to the service station, picked up Sisson, and drove back to the McCain residence. While there, Bell and Sisson got out of the car and approached the house, but Sisson again said that he did not want to break into the house. Bell testified that he then took Sisson back to the service station and left him there while Bell returned to commit the McCain burglary alone.

The jury convicted Sisson of the McCain burglary, but acquitted him of the Payne and Marcellino burglaries. Sisson waived his right to a jury trial on the habitual offender count, and the trial court adjudged him an habitual offender. Sisson was sentenced to thirty years incarceration.

## DISCUSSION AND DECISION

 Sisson argues that there is insufficient evidence to sustain his conviction for burglary because the conviction is based solely on testimony which is inherently contradictory and equivocal and is uncorroborated by independent circumstantial evidence. Appellate review of a sufficiency of the evidence claim is well-established. As an appellate court, we will neither reweigh the evidence nor judge the credibility of the witnesses, as those are matters exclusively within the province of the jury. *Timberlake v. State,* 690 N.E.2d 243, 251 (Ind.1997), *reh'g denied, cert. denied.* Instead, we consider the evidence most favorable to the verdict, along with all reasonable inferences to be drawn therefrom, in order to determine whether a

reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* If substantial evidence of probative value exists to support each element of the crime, then we will not disturb the conviction. *Id.*

The above standard of review notwithstanding, our courts have repeatedly held that a reviewing court may impinge upon the fact finder's resolution of credibility issues when confronted with testimony of "inherent improbability," or coerced, equivocal, wholly uncorroborated testimony of "incredible dubiosity." *Webster v. State*, 699 N.E.2d 266, 268 (Ind.1998); *Lott v. State*, 690 N.E.2d 204, 208 (Ind.1997); *Timberlake v. State*, 690 N.E.2d 243, 252 (Ind.1997); *Davenport v. State*, 689 N.E.2d 1226, 1230 (Ind.1997), *reh'g granted on other grounds.* If this Court is confronted with a situation where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the defendant's guilt, then we may find that no reasonable person could believe the testimony, and we may reverse the trial court's decision. *Davenport*, 689 N.E.2d at 1230.

Sisson argues that there was insufficient evidence to support his conviction because the State's only evidence of his participation in the McCain burglary was Bell's testimony. That testimony, Sisson argues, was inherently contradictory and equivocal. We agree. Bell testified on direct examination that Sisson was with him for all three burglaries. Bell also stated that Sisson entered each of the three homes that were burglarized. On cross, however, Bell recanted his testimony: "To tell you the truth Mr. Sisson wasn't with me for the second house [Marcellino] and the third house [McCain]". When defense counsel confronted Bell with the fact that he had just testified otherwise under oath, Bell acknowledged his inconsistency, saying, "The only reason I said that he was with me, you know, because the [Payne residence] is that we both, you know, we both went in that place. I figured that if I told that he was with me on the second and third house, that, you know, we'd both get the same amount of time. And you know that I wouldn't be the only one getting in trouble,

that we'd both, you know, get the same amount of sentence." Defense counsel then asked, "So those were outright lies about the second and the third house?" And Bell replied, "Yes, sir."

Bell also contradicted his testimony regarding whether Sisson had entered any of the homes, stating not only that Sisson was not with Bell for the second and third houses, but also that Sisson had not entered the Payne house: "[Sisson] didn't go in the house. I'm really not sure. . . . I don't think he went in." Regarding specifically the McCain burglary (third house), for which Sisson was convicted, Bell first testified that Sisson was with Bell when Bell burglarized the house. He further testified that Sisson had entered the McCain residence and helped remove some guns. Bell later recanted, testifying that although he had taken Sisson to the McCain residence, Sisson did not want to burglarize the home and asked Bell to take him to the gas station where his sister worked. Bell then returned to commit the burglary by himself. According to Bell's second version, Bell and Sisson got out of the car at the McCain residence and approached the house but returned to the car when Sisson said he did not want to burglarize the home.

In addition to the express contradictions in Bell's testimony, and his own admission that he had lied when he told the police and later the jury that Sisson had participated in the three burglaries, Bell's testimony is riddled with equivocal language:

Q: Did you throw [the rock] in the window [of the Payne house]?

A: It's been awhile ago, and I was drunk during the day . . . I can't really . . .

. . .

Q: Did [Sisson] enter the [Marcellino] residence with you?

A: . . . I was sure he was in there, but I can't be sure . . . I don't know . . . but I don't know—I'm sure it was him, but.

Q: Were those the only same two lies [told to the police]?

A: I suppose.

Q: I'm sorry?

A: I suppose.

. . .

Q: Okay, and today you're telling the Court that [an earlier statement's] not true?

A: No. To tell you the truth Mr. Sisson wasn't with me for the second house [Marcellino] and the third house [McCain]. He didn't go in the first— He went in but, he didn't, you know, touch anything.

. . .

Q: And wasn't it your testimony that you broke the glass [at the Payne house] and you went in and Bret didn't even go in?

A: I suppose he didn't go in.

. . .

Q: Did he go in the [Payne] house or did he not go in the house?

A: He didn't go in the house. I'm really not sure . . . I don't think he went in.

In the end, the only part of the story about which Bell seemed certain was that Sisson did not want to commit the McCain burglary so Bell did it by himself. Sisson argues that because Bell's testimony is inherently contradictory and equivocal, we should apply the "incredible dubiosity" rule and reverse his conviction.

The State contends, however, that the rule does not apply in this case. The State's argument is twofold. First, the State argues that Bell's testimony was not coerced. This argument is easily disposed of, because the "incredible dubiosity" rule does not require coercion. Rather, it applies to inherently contradictory testimony that is *either* coerced *or* equivocal. As discussed above, Bell's testimony is certainly both contradictory and equivocal. The State's second argument is that the "incredible dubiosity" rule

does not apply here because there is corroborating circumstantial evidence in the form of a footprint at the McCain residence (third house). However, the evidence of the footprint is actually as follows: the casting of the footprint and Sisson's shoe had similar class characteristics (those characteristics common to all shoes of that brand and style and size); no individual characteristics were identified. From this, the State's expert concluded that Sisson's shoe "could have" made the impression: "The shoes . . . could not be identified or eliminated has [sic] having made the impression. . . ." (R. 762). Such evidence is inconclusive at best.

▮ Even if the footprint had been identified as matching Sisson's shoe, it is evidence only that Sisson was on the premises at some point. It is well-settled that mere presence at the scene of a crime is insufficient to convict on the underlying crime. *Fuller v. State*, 674 N.E.2d 576, 579 (Ind.Ct. App.1996). Furthermore, as Sisson points out, evidence of his presence at the McCain residence is totally consistent with Bell's final testimony that Sisson went to the home but did not want to break in and instead had Bell take him back to the gas station. Therefore, not only is the footprint evidence inconclusive but it is also of minimum probative value regarding whether Sisson committed the burglary. Under these circumstances, we find that the footprint is insufficient to render the "incredible dubiosity" rule inapplicable in this case.

Finally, we are troubled by the jury's determination that Sisson was not guilty of the Payne and Marcellino burglaries, but guilty of the McCain burglary. If Bell's testimony is separated into two parts, his first version, which had Sisson participating in all three burglaries, and his second version, which had Sisson participating only in the Payne break-in, then the jury's conviction on the McCain burglary alone seems illogical. We are mindful that it is the jurors' function to sift and weigh the evidence before them. But as we discussed above, this Court may invade the jury's province where a conviction is based on a single witness' uncorroborated testimony which is inherently contradictory and equivocal. Here, the evidence against

Sisson consisted solely of Bell's essentially uncorroborated testimony. Although Bell initially implicated Sisson in the burglaries, he later expressly contradicted himself and admitted that his testimony against Sisson was a lie, fabricated in an attempt to get Sisson into trouble. And, as demonstrated above, Bell's testimony was equivocal throughout. No reasonable person could find Sisson guilty beyond a reasonable doubt based on this evidence. Application of the "incredible dubiosity" rule requires this Court to reverse Sisson's conviction. To dodge that responsibility would effectively be to reject the "incredible dubiosity" rule, despite supreme court precedent retaining it as part of our criminal jurisprudence.

## CONCLUSION

There is insufficient evidence of probative value to sustain Sisson's conviction for the burglary of the McCain residence.

Reversed.

SULLIVAN, J., and MATTINGLY, J., concur.