Jarman **SPURLOCK, Appellant– Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 70A01–9812–CR–452.

Court of Appeals of Indiana.

Oct. 26, 1999.

Transfer Denied Dec. 15, 1999.

Kris Meltzer, Stubbs & Meltzer, Shelbyville, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

GARRARD, Judge

### Case Summary

Appellant Jarman Spurlock (Spurlock) appeals his convictions for Child Molesting,[1] a Class C felony, and two counts of Incest,[2] both Class D felonies. On appeal, Spurlock presents the following issues: (1) Whether his convictions were supported by sufficient evidence: (2) Whether his convictions for Child Molesting and Incest violate the Double Jeopardy Clause; (3) Whether he was denied the right to an impartial jury; and (4) Whether he was denied the effective assistance of counsel.

We affirm.

### Facts and Procedural History

The facts most favorable to the verdict reveal that Spurlock's biological father, Elmer Spurlock, married Bernice Spurlock when Spurlock was four years old. During the marriage, Elmer and Bernice had three daughters, including J.S.R., with whom Spurlock resided for several years. In 1982, Spurlock married and moved into an apartment in Rushville with his wife. In March of 1982 their first child was born.

In June of 1983, Spurlock's wife gave birth to their second child. As a result, Spurlock, who was then twenty-one years old, asked his half-sister, J.S.R., who was then fifteen years old, to stay with them for a while to help care for the older child. One morning, while Spurlock's wife was asleep in another room, Spurlock entered the room where J.S.R. had been staying, climbed into her bed, pulled off her shorts and forced her to have sexual intercourse. Spurlock then threatened to kill J.S.R. if she told anyone what had happened.

In December of 1985, Spurlock's wife had surgery and again needed help caring for her children. J.S.R. reluctantly agreed. One morning Spurlock "jumped" on J.S.R. while she was lying on the living

---

1. IND.CODE § 35–42–4–3(c) (Burns Supp. 1982). For present provision as amended *see* IND.CODE § 35–42–4–3 (Burns 1998).

2. IND.CODE § 35–46–1–3 (Burns Supp.1978). For present provision as amended *see* IND. CODE § 35–46–1–3 (Burns 1998).

room couch. Although J.S.R. attempted to push Spurlock away, Spurlock again forced her to have sexual intercourse with him.

Eventually, in June of 1986 J.S.R. told her mother about the two incidents with Spurlock and, one year later, related the details to investigating officer Robert M. Bridges of the Rushville Police Department. Thereafter, on July 8, 1987, Spurlock was charged with Child Molesting, as a Class C felony, and Incest, as a Class D felony, with regard to the June 1983 incident, and Incest, as a Class D felony, with regard to the December 1985 incident.[3]

During the jury trial, which commenced on February 27, 1989, several witnesses testified on behalf of the State including J.S.R. who related the details surrounding both the June 1983 and December 1985 incidents. After the jury had reached a verdict, but before the verdict was announced in open court, one of the jurors suffered a seizure in the jury room. As a result, the court asked both the State and defense counsel if they would agree to resume the proceedings the following afternoon so that all of the jurors could be present for the reading of the verdict. Although the parties initially agreed to the court's request, shortly thereafter the juror regained consciousness. Consequently, the trial judge then asked both attorneys if they would agree to allow the bailiff to ask the juror if she felt able to return to the courtroom for a reading of the verdict. Again, both attorneys agreed to the court's request. Thereafter, all of the jurors entered the courtroom.

Before the verdict was read, the court asked the jury's foreman if the verdict had been reached before the medical emergency occurred and the "medical and/or sher-

iff's personnel" entered the jury room. Record at 461. After the foreman responded that it had, the court instructed the foreman to give the verdict to the bailiff. At that point, the foreman informed the bailiff that he had already given the papers to the bailiff. Shortly thereafter, the bailiff located the verdict, which apparently was nearby, and handed it to the judge who announced that Spurlock had been found guilty on all counts. Following a sentencing hearing on March 22, 1989, Spurlock was sentenced to seven years imprisonment for child molesting, and three years for each count of incest, with all sentences to be served concurrently.[4]

## Discussion and Decision

### I. Sufficiency of the Evidence

Spurlock first challenges the sufficiency of the evidence supporting each of his convictions. Our standard for reviewing sufficiency claims is well settled. We consider only the evidence most favorable to the verdict and do not reweigh the evidence or judge witness credibility. *Butler v. State*, 622 N.E.2d 1035, 1039 (Ind.Ct.App.1993), *reh'g denied, trans. denied*. If we determine that the convictions are supported by substantial evidence of probative value, we will affirm. *Id.*

Here, the record reveals that the State charged Spurlock with child molesting and one count of incest with regard to the single act of sexual intercourse which occurred in June of 1983. Specifically, the State alleged that Spurlock had committed child molesting by performing sexual intercourse with J.S.R., who was at least twelve years old but under the age of sixteen in June of 1983 when Spurlock was at least

3. Spurlock was also charged with two additional counts of Incest, both Class D felonies. However, the State dismissed those charges prior to trial on March 18, 1988.

4. Spurlock was granted permission to file a belated praecipe pursuant to a petition filed November 10, 1998, almost ten years after he was sentenced. Although presumably Spur-

lock has completed serving his seven-year sentence, he is presently incarcerated at the Wabash Valley Correctional Facility on unrelated charges. Spurlock now brings this appeal to challenge these convictions upon which an habitual offender adjudication was purportedly based. *See* Notice of Appeal (filed December 9, 1998).

sixteen years old. The State also alleged that Spurlock had committed incest by engaging in sexual intercourse with J.S.R., while Spurlock was at least eighteen years old, with the knowledge that J.S.R. was his half-sister. The record further reveals that the State charged Spurlock with a second count of incest based upon the December 1985 incident. In particular, the State alleged that Spurlock, who was at least eighteen years old, engaged in sexual intercourse with J.S.R., with knowledge that J.S.R. was his half-sister. According to Spurlock, the State failed to prove that J.S.R. was present at Spurlock's apartment in June of 1983 and that an act of sexual intercourse had occurred in both June of 1983 and December of 1985.

However, the record reveals that J.S.R. testified at trial and described the details surrounding both the June 1983 and December 1985 incidents. Specifically, she testified that in June of 1983 she stayed with her half-brother in his apartment to take care of his first child soon after Spurlock's wife gave birth to their second child. J.S.R. further testified that while she was staying with the family, Spurlock crawled into the bed where she had been sleeping, pulled off her shorts and forced her to submit to sexual intercourse. J.S.R. also testified that in December of 1985, she again reluctantly agreed to stay with Spurlock's family and that one morning, while she was lying on the living room couch, Spurlock "jumped" on her, and forced her to engage in sexual intercourse. Record at 334.

■ Despite this testimony and Spurlock's concession that generally the uncorroborated testimony of a victim is sufficient to sustain a conviction, *see Baxter v. State,* 522 N.E.2d 362, 365 (Ind.1988) (finding that the uncorroborated testimony of the victim alone is sufficient to support a conviction for child molesting and incest), *reh'g denied,* Spurlock contends that J.S.R.'s testimony is inherently improbable. Specifically, he contends that J.S.R. was not a credible witness because her

testimony was contradicted by Spurlock's ex-wife who testified that she did not recall J.S.R. staying with the family in June of 1983 and, with regard to the December 1985 incident, she was asleep in an adjacent room but did not hear noises which would have indicated a struggle.

This court has created an exception to the general rule that we will not judge witness credibility when a single witness's testimony is "inherently improbable" or of "incredible dubiosity." *See White v. State,* 706 N.E.2d 1078, 1079 (Ind.1999). However, the exception is limited to cases where a sole witness presents "inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence...." *Sisson v. State,* 710 N.E.2d 203, 206 (Ind.Ct. App.1999), *trans. denied.* Despite Spurlock's contention, this case does not fall within the exception.

Initially, we note that Spurlock has failed to point to any part of J.S.R.'s testimony which was inherently contradictory or coerced. Additionally, our review of the record reveals that J.S.R. testified unequivocally that she had stayed with the family in 1983 and that Jarman forced her to engage in sexual intercourse in both June of 1983 and December of 1985. Finally, there was additional evidence which tended to support J.S.R.'s testimony that she had stayed with Spurlock in June of 1983. During trial, Spurlock's ex-wife testified that her first child was born in March of 1982 and that her second child was born on June 13, 1983. This evidence is clearly consistent with and tends to support J.S.R.'s testimony that she stayed with Spurlock's family in June of 1983 to help Spurlock's ex-wife with the children after the birth of their second child. The record also reveals that Officer Bridges testified, without objection, that while interviewing J.S.R., she revealed that she had been forced to engage in sexual intercourse with Spurlock in June of 1983 and December of 1985. Therefore, we find no evidence that J.S.R.'s testimony was of

incredible dubiosity or inherently improbable. Rather, Spurlock's argument is merely an invitation to reweigh the evidence which we will not do. The trier of fact was entitled to believe J.S.R.'s testimony and we will not disturb the jury's determination. The evidence is sufficient to support the convictions.

## II. Double Jeopardy

Next, Spurlock contends that his convictions for child molesting and count I of incest, which are based upon the single incident of sexual intercourse in June of 1983, violate both federal and state prohibitions against double jeopardy. Specifically, Spurlock argues that the same act of sexual intercourse cannot support the imposition of two separate sentences for the same injurious consequence.

Initially, we note that we will review Spurlock's claim only under the federal double jeopardy clause. In *Games v. State*, 684 N.E.2d 466, 473 n. 7 (Ind.1997), *modified on reh'g*, 690 N.E.2d 211 (Ind. 1997), *cert. denied*, .—— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), our supreme court stated that in order to set forth a separate double jeopardy claim under the Indiana Constitution, the appellant must do more than refer to the double jeopardy provision of the Indiana Constitution or rely upon a case which "mentions the Indiana Constitution" and resolves the double jeopardy issue by using an analysis based upon the federal provision. Rather, the appellant must argue that the protections provided under the double jeopardy clause of the Indiana Constitution are "different from those under the federal constitution." *Id. See also Valentin v. State*, 688

N.E.2d 412, 413 (Ind.1997) (finding that defendant did not raise state double jeopardy claim where he expressly invoked only federal double jeopardy clause and cited to case on state double jeopardy clause but did not provide separate analysis of state double jeopardy claim or argue why it provided protection different from federal double .jeopardy clause); *Haak v. State*, 695 N.E.2d 944, 952 n. 8 (Ind.1998) (concluding that defendant did not properly raise state double jeopardy claim under Indiana Constitution where defendant cited case in which defendant argued that convictions and sentences for both Murder and Conspiracy to Commit Murder violated Article I, Section 14, of the Indiana Constitution without making separate state constitutional argument); *Benton v. State*, 691 N.E.2d 459, 464 (Ind.Ct.App. 1998) (concluding that appellant failed to set forth state double jeopardy claim by merely referencing Article I, Section 14, without providing separate analysis of state double jeopardy claim or argument as to why it provided protection different from federal constitution).

■ Here, Spurlock does nothing more than contend that the imposition of two sentences for the same injurious consequences "violates both federal and state double jeopardy prohibitions" and rely upon three cases which, at the time, applied the same analysis to analyze both state and federal double jeopardy claims.[5] Appellant's Br. at 17. Otherwise, Spurlock makes no attempt to argue that Indiana has always had a separate double jeopardy analysis which predates the federal analysis, *see, e.g., Russell v. State*, 711 N.E.2d

---

5. In particular, Spurlock relies on *Ellis v. State*, 528 N.E.2d 60, 61 (Ind.1988), *Hansford v. State*, 490 N.E.2d 1083, 1089 (Ind.1986) and *Acuna v. State*, 581 N.E.2d 961, 963 (Ind. Ct.App.1991). In particular, Spurlock appears to rely on the following statement which was first articulated in *Hansford* and which was subsequently quoted by *Ellis* and *Acuna:* "The imposition of two sentences for the same injurious consequences which were sustained by the same victim and inflicted by the defendant's singular act [violates] both

federal and state double jeopardy prohibitions." Recently, however, a majority of our supreme court in *Richardson v. State*, (1999) Ind., 717 N.E.2d 32, 49 n. 36 specifically noted that "post-*Elmore [v. State*, 269 Ind. 532, 382 N.E.2d 893 (1978)], pre-*Games* cases" such as *Ellis* and *Hansford* which merely reference the Indiana Double Jeopardy Clause could not be considered "precedent regarding the application of the Indiana Double Jeopardy Clause."

545, 546 (Ind.Ct.App.1999), *trans. denied,* or that this court should adopt a separate analysis as argued in *Guffey v. State,* 717 N.E.2d 103, 104 (Ind.1999). Therefore, Spurlock has not presented a claim under the Indiana Constitution. Consequently, we address his claim under the federal analysis adopted by our supreme court in *Games, supra.*

 Spurlock correctly notes that the Double Jeopardy Clause protects against multiple punishments for the same offense. *Roberts v. State,* 712 N.E.2d 23, 29 (Ind.Ct.App.1999), *trans. denied.* With regard to this protection, the purpose of the Double Jeopardy Clause is to "ensure that a court imposes no more punishment on a defendant than the legislature intended." *Games, supra* at 474. Where it is clear that the legislature intended to impose multiple punishments, there is no violation of double jeopardy and further inquiry is not necessary. *Id.* However, where the intent is not clear, this court applies the "same elements" test set forth in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Id.* at 475. If each statutory provision requires proof of an additional fact which the other does not, then we assume that the legislature intended multiple punishments. *Id.*

 At the time the incident occurred in June of 1983, the State, in order to support a conviction for child molesting, was required to prove that 1) Spurlock performed sexual intercourse with J.S.R., 2) Spurlock was at least sixteen years of age when the incident occurred, and 3) J.S.R. was at least twelve years old but not more than sixteen years of age. (R. 85). IND.CODE § 35–42–4–3(c) (Burns Supp. 1982). In order to prove the offense of incest, the State was required to prove (1)

that Spurlock engaged in sexual intercourse with J.S.R., (2) with knowledge that J.S.R. was his sibling, (3) when Spurlock was at least eighteen years of age. IND. CODE § 35–46–1–3 (Burns Supp.1978). A review of these statutes indicates that each offense required proof of an additional fact which the other did not. The offense of child molesting required proof that J.S.R. was at least twelve years old but not more than sixteen years of age while the incest statute required proof that the perpetrator engaged in the conduct with knowledge that the other person was a sibling. From this analysis we conclude that the legislature intended multiple punishments for the same incident of sexual intercourse. Consequently, there is no double jeopardy violation under the federal analysis.[6] *See, e.g., Roberts, supra* at 30 (convictions and sentences for rape and child molesting which arose from same act of sexual intercourse did not violate federal double jeopardy clause as each offense required proof of an element which the other did not).

### III. Impartial Jury/Effective Assistance of Counsel

Spurlock argues that he was denied his right to an impartial jury, guaranteed by Article I, Section 13, of the Indiana Constitution, when the court allowed "jury irregularities to go uncorrected during deliberations." Appellant's Br. at 17. Specifically, he contends that the trial court abused its discretion by failing to replace the ill juror with an alternate juror. Spurlock also asserts that the trial court should have questioned the other jurors to confirm the foreman's response that a verdict had been rendered prior to the seizure or the entry of medical personnel into the jury room and to ensure that the juror's seizure did

**6.** We acknowledge that in *Acuna v. State,* 581 N.E.2d 961, 963 (Ind.Ct.App.1991), one of the cases cited by Spurlock, we clearly held that convictions for child molesting and incest could not stand when they were based upon the same incident of sexual intercourse. However, the *Acuna* court did not employ the

same elements test set forth in *Games. Acuna, supra* at 965. In light of our supreme court's relatively recent ruling in *Games,* however, we find that *Acuna* is no longer controlling for purposes of a federal Double Jeopardy Clause analysis.

not cause her to be inattentive or expedite her decision making process. Finally, Spurlock asserts that the trial court should have ensured that the bailiff had not entered the jury room before the jury had rendered its verdict.

Initially, we note that Spurlock does not assert that his counsel requested that the trial court take any of the aforementioned actions during the trial. Therefore, with regard to at least the issue concerning discharge of the ill juror, Spurlock has waived this issue on appeal. *See Pendergrass v. State,* 702 N.E.2d 716, 718 (Ind. 1998) (failure to request discharge of juror and substitution of alternate results in waiver of issue on appeal). However, Spurlock also makes the assertion that his counsel was ineffective for failing to makes these requests. Therefore, we will address his arguments simultaneously.

■■■ To prevail on a claim that counsel was ineffective, the appellant must demonstrate that his counsel's performance was deficient and that the alleged deficiency was prejudicial. *Autrey v. State,* 700 N.E.2d 1140, 1141 (Ind.1998). We presume that counsel's performance was effective and determine the reasonableness of counsel's actions under an objective standard. *Id.*

We first address Spurlock's contention that counsel should have requested that the juror, who experienced the seizure after the verdict was allegedly reached but before the verdict was read in open court, be replaced with an alternate. According to Ind. Trial Rule 47, which was in effect at the time of defendant's trial, the trial judge. was empowered to replace a juror with an alternate if the juror became or was found "to be unable or disqualified to perform [her] duties" prior to the time the jury "return[ed] its verdict." The trial

court's decision to invoke the rule and replace a juror with an alternate rests within the trial court's discretion. *Jervis v. State,* 679 N.E.2d 875, 881 (Ind.1997).

■■■ Here, the record reveals that after the jury had retired to deliberate, the trial court informed both the prosecutor and defense counsel in open court that, although the jury had arrived at a verdict, one of the jurors had suffered a seizure and would be unable to be present in open court for a reading of the verdict. Consequently, the court asked both attorneys if they would agree to resume the proceedings the following afternoon. The record further reveals that although both parties agreed, the ill juror soon thereafter regained consciousness and was able to enter the courtroom for a reading of the verdict. Further, after the jury entered the courtroom but before the verdict was read, the trial court questioned the foreman to ensure that the verdict had been reached before the juror became ill, to which the foreman responded that it had. Thus, although the juror who suffered the seizure became temporarily incapacitated, there is no evidence that the juror was unable to perform her duties as a juror at any time before the jury arrived at its verdict. Further, the juror was present in the courtroom for a reading of the verdict. Thus, the trial court would have been well within in its discretion in deciding not to invoke the rule and replace the juror. Consequently, Spurlock's counsel was not ineffective for failing to make such a request.

Spurlock also argues that his counsel should have requested that the trial court question the individual jurors to confirm the foreman's response that the verdict had been reached prior to the juror's seizure and the arrival of medical personnel[7]

---

7. In support of his contention, Spurlock relies upon *Hill v. State,* 173 Ind.App. 232, 363 N.E.2d 1010 (1977), *reh'g denied,* in which this court held that the trial court committed reversible error by allowing an alternate juror to sit with the regular jurors during delib-

erations even though the alternate was admonished not to participate. However, the holding in *Hill* has been questioned, if not expressly overruled, on several occasions. *See Johnson v. State,* 267 Ind. 256, 369 N.E.2d 623, 625 (1977) (concluding that former ver-

and to ensure that the juror's seizure did not affect her decision to find the defendant guilty. Specifically, Spurlock suggests that prior to the seizure, the juror might have been inattentive or willing to compromise her verdict in order to expedite the process.

Spurlock's concern appears to be twofold. First, Spurlock seems to suggest that had the trial court questioned the individual jurors, the court might have learned that they had engaged in improper communications with the medical personnel and others who apparently entered the jury room to aid the juror who suffered the seizure. Spurlock also seems to suggest that the court might have learned that the juror's seizure caused her to be inattentive during court proceedings or to expedite her decision-making process. We address each contention in turn.

In *Bruce v. State,* 268 Ind. 180, 375 N.E.2d 1042 (Ind.1978), *reh'g denied, cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978), the bailiff had entered the jury room to make coffee for the jurors once the jury had begun its deliberations. *Id.* at 1067. Although defense counsel became aware of the alleged irregularity almost immediately after it had occurred, the attorney did not ask the trial court to take any action in response to the incident. *Id.* On appeal, however, the defendant argued that the trial court should have inquired into possible prejudice resulting from the bailiff's actions sua sponte and, further, that because the trial court had failed to do so, prejudice would

be presumed. *Id.* Our supreme court, however, disagreed.

Although noting that generally any communications with a jury during deliberations were prohibited by statute,[8] and that harm would be presumed if certain irregularities were not explained, the *Bruce* court found that harm would be presumed only where the communications related to the substantive rights of the accused, in such cases where the communications involved "ex parte delivery of legal opinions or instructions to the jury." *Id.* at 1068. The court also found that the defendant had failed to show that any communication at all had occurred or that the jury was deliberating at the time the bailiff entered. *Id.*

■ Here, the same statute which applied in *Bruce* and prohibited communications with the jury was in effect during Spurlock's trial. *See* IND.CODE § 35–37–2–6(a)(3) (West's 1986) (once jury has retired to the jury room for deliberations, no person is permitted to speak or communicate with the jurors). Although in this case, presumably the medical personnel communicated with at least some of the jurors in order to aid the juror who experienced the seizure, there is absolutely no evidence that the communication related to the substantive rights of the accused. Further, as indicated by the jury foreman, there was no evidence that the jury was deliberating when the medical personnel entered the jury room. Consequently, we cannot say that the type of communication which allegedly occurred in this case caused a presumption of prejudice to arise and trig-

sion of statute which forbids communication by jury with any other person was not violated when alternate juror was permitted to sit with regular jurors during deliberations when alternate was instructed not to participate in the deliberations unless it became necessary to replace one of original jurors); *Wilcoxen v. State,* 619 N.E.2d 574, 577 (Ind.1993) (explaining that our supreme court has consistently found, contrary to *Hill,* that alternate jurors are permitted to retire to the jury room during deliberations), *reh'g denied, cert. denied,* 436 U.S. 948, 98 S.Ct. 2855, 56

L.Ed.2d 791; *Williams v. State,* 181 Ind.App. 526, 392 N.E.2d 817, 820 (1979) (noting that appellant's reliance upon *Hill* was misplaced in light of our supreme court's holding in *Johnson* that alternate juror may join jury in jury room during deliberations).

8. In particular, the court in *Bruce* referred to IND. CODE § 35–1–37–4 (Burns 1975). Although recodified at IND.CODE 35–37–2–6, the same version of the statute was in effect during Spurlock's trial.

gered the trial court's duty to inquire into possible prejudice. Furthermore, even assuming the presumption of harm arose, the trial court did conduct a brief questioning of the jury foreman who informed the court that the jury had arrived at its decision before the juror became ill and before any medical personnel entered the room. We cannot say that more was required.

We further find that counsel was not deficient for failing to ask the court to make further inquiry into possible prejudice. In *Butler, supra,* at 1040, this court, although recognizing that a rebuttable presumption of prejudice may arise from improper communications with the jury, stated that the presumption arises and triggers the duty of the court to consider whether the verdict was prejudiced by the improper communication, only if the defendant shows by a preponderance of the evidence that the communication actually occurred and that it pertained to a matter pending before the jury. Here, even assuming that some type of communication occurred between the medical personnel and some of the jurors, there is nothing in the record to suggest that had the trial court questioned the remaining jurors, they would have revealed that the alleged communication pertained to a matter pending before the jury. As counsel would have been unable to meet the requisite burden, we cannot say that counsel was deficient for failing to ask the court to conduct further inquiry.

■■■■■ With regard to Spurlock's contention that the trial court should have inquired as to whether the juror who became ill may have been inattentive or expedited the process, our supreme court in *Chubb v. State,* 640 N.E.2d 44, 48 (Ind. 1994), *reh'g denied,* stated that in order to prevail on a claim that a juror was inattentive, the defendant was required to show that the juror was actually inattentive and that the juror's inattention prejudiced the defendant. Here, Spurlock's claim regarding the possibility that the seizure may have affected the ill juror's attention span

and decision making process is nothing more than pure speculation. Therefore, we cannot say that the trial court erred by deciding not to further inquire about the possible inattentiveness or decision-making process of the ill juror or that counsel was deficient for failing to make such a request. *See id.* (defendant failed to establish that he was deprived of fair trial due to alleged juror inattentiveness where it was impossible to know whether the juror was actually sleeping, as alleged juror inattentiveness was not brought to trial court's attention and post trial affidavit of courtroom spectator did not specify the identity or duration of instructions, argument or testimony missed).

■■■■ Finally, Spurlock contends that the trial court should have inquired as to whether the bailiff had entered the jury room during deliberations. Spurlock appears to suggest that because the bailiff had the verdict at the time the trial court called for it, the bailiff must have entered the jury room at some point before the jury rendered its verdict in open court. As Spurlock contends, it appears that the bailiff took possession of the verdict form sometime before the trial judge asked the foreman to hand the bailiff the verdict in open court. In particular, the record reflects that following colloquy occurred:

Court: Okay. Thank you. Would you hand your verdict to the Bailiff, who will bring it to me to be read in open court.

Foreman to Bailiff: You already have it. You—you already have it.

Bailiff: Papers you gave me?

Foreman: Yeah, it was the first—first group of papers I gave you. I think the ones to your right. Yeah.

Court: Thank you. You may be seated. (Pause). The verdicts read as follows:

Record at 461–62. Thereafter, the trial court announced the verdict.

Although it is not clear from the record when the bailiff took possession of the verdict, even assuming the bailiff entered the jury room to aid the ill juror and took

possession of the verdict at that time, there is no evidence that the bailiff communicated with the jury. Further, even assuming a communication did occur, there is no evidence that the communication related to the substantive rights of the accused or that the jury was deliberating when the bailiff entered. Therefore, no presumption of prejudice arises and the trial court was not required to further investigate regarding the possibilities of prejudice resulting from the bailiff's alleged entry into the jury room. *See Bruce, supra* at 1068. Further, we cannot say that had counsel requested such an inquiry, evidence would have been revealed, such that counsel would have been able to show, by a preponderance of the evidence, that a communication occurred and that it pertained to a matter pending before the jury. Therefore, Spurlock was not denied the effective assistance of counsel.

Judgment Affirmed.

BAILEY, J. concurs.

SULLIVAN, J. concurs in part and dissents in part and files separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part

I concur with respect to Parts I and III. I respectfully dissent with regard to Part II.

As accurately noted by the majority, "the Double Jeopardy Clause protects against multiple punishments for the same offense." Op. at 779. In my view, *Games v. State* (1997) Ind., 684 N.E.2d 466, *reh'g* 690 N.E.2d 211, did not, by implication or otherwise, overrule the clear and unambiguous holdings of our Supreme Court in *Ellis v. State* (1988) Ind., 528 N.E.2d 60, and in *Hansford v. State* (1986) Ind., 490 N.E.2d 1083. The decision of this court in *Acuna v. State* (1991) Ind.App., 581 N.E.2d 961 correctly reflects these holdings in striking down an incest conviction as violative of double jeopardy considerations when viewed in conjunction with a

child molesting/sexual intercourse conviction.

I would do the same in this case insofar as the two convictions relate to the 1983 single incident involving J.S.R. Here, there was but one sexual act alleged and proved. There was but one victim. I cannot perceive that the General Assembly intended that there be multiple punishments for that single act.