## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 09 2015, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Mark S. Lenyo
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General

Kenneth E. Biggins
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shaun Terrell Balkcom,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 9, 2015

Court of Appeals Cause No.
71A03-1407-CR-254

Appeal from the St. Joseph Superior Court

The Honorable Jerome Freese, Judge

Cause No. 71D03-1204-FA-11

**Mathias, Judge.**

[1] Shaun Balkcom ("Balkcom") was convicted in St. Joseph Superior Court of Class A felony child molesting and Class C felony child molesting. The trial court sentenced Balkcom to an aggregate term of thirty-seven years. Balkcom

appeals and argues that the State failed to present sufficient evidence to support his convictions.

[2] We affirm.

# Facts and Procedural History

[3] On January 15, 2011, thirteen-year-old T.J., who lived with her mother and two sisters in the overcrowded home of her mother's friend, was asleep on the floor of the home's living room, where she and her family regularly slept. T.J. was wearing pajama pants, a shirt, and undergarments. T.J.'s mother, R.R., and Balkcom, R.R.'s boyfriend, also slept on the floor.[1] T.J.'s older sister, S.J., slept nearby on a chair or on the floor, and their youngest sister, K.J., was asleep on a couch.

[4] At some point during the night, T.J. awoke to find Balkcom touching her breasts and vagina. T.J. told Balkcom to stop. Balkcom covered T.J.'s mouth with one hand and inserted his fingers into her vagina, then pulled down T.J.'s pajama bottom and inserted his penis into her vagina. Balkcom then got up and went upstairs.

[5] T.J., hysterical and crying, woke her mother and told her what had happened. R.R. told T.J. to go upstairs with her sisters. T.J. went upstairs and used the

---

[1] At trial, T.J. testified that R.R. slept between Balkcom and T.J. R.R., however, testified that Balkcom slept next to T.J.

restroom but did not shower or change her clothes. Meanwhile, Balkcom left the house.

[6] R.R. took T.J. to the hospital, where an examination was performed on T.J. and T.J.'s clothing and DNA samples were collected. Tests on T.J.'s clothing revealed a stain on her underpants that tested positive for semen. The sample, however, was not large enough to test for DNA. Also found on T.J.'s underpants was a segment of DNA that matched Balkcom's profile.[2]

[7] On April 5, 2012, the State charged Balkcom with Count I, Class A felony child molesting, alleging that Balkcom performed sexual intercourse with T.J.; Count II, Class A felony child molesting, alleging that Balkcom performed deviate sexual conduct with T.J. by penetrating T.J.'s sex organ with an object; and Count III, Class C felony child molesting, alleging that Balkcom touched T.J. in her vaginal area and/or her breasts with the intent to arouse or satisfy the sexual desires of either T.J. or Balkcom. A jury trial was held from May 12 to May 14, 2014. The jury convicted Balkcom of Counts II and III. On June 24, 2014, the trial court sentenced Balkcom to an aggregate term of thirty-seven years imprisonment, thirty-two years for the Class A felony conviction, and five years for the Class C felony conviction.

[8] Balkcom now appeals.

---

[2] This profile was not unique to Balkcom, however, and could have belonged to one of Balkcom's male relatives or another male of the same profile.

# Discussion and Decision

[9] Balkcom argues that the State failed to present sufficient evidence to sustain his conviction. Specifically, Balkcom claims that T.J.'s testimony was incredibly dubious.

[10] Our standard of review with regard to sufficiency claims is well settled. We neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence favorable to the verdict and all reasonable inferences that can be drawn therefrom. *Newman v. State*, 677 N.E.2d 590, 593 (Ind. Ct. App. 1997). If substantial evidence of probative value exists from which a trier of fact could find guilt beyond a reasonable doubt, we will affirm the conviction. *Id*. A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Turner v. State*, 720 N.E.2d 440, 447 (Ind. Ct. App. 1999). Further, we are mindful that the trier of fact is entitled to determine which version of the incident to credit. *Barton v. State*, 490 N.E.2d 317, 318 (Ind. 1986), *reh'g denied*.

[11] Balkcom claims that T.J.'s testimony was incredibly dubious because (1) "T.J.'s claim that Balkcom inserted his fingers inside her vagina is inconsistent with T.J.'s account [that Balkcom inserted his penis into her vagina] which she gave to her mother immediately after she awoke her mother"; T.J.'s statements regarding where her sister, S.J., was sleeping and whether Balkcom was sleeping next to her were inconsistent with other witnesses' testimony; and "T.J.'s testimony that [Balkcom] fondled her, inserted his fingers in her vagina

and then had intercourse with her, all while her mother slept soundly on the other side of [] Balkcom is inherently improbable." Appellant's Br. at 14-15.

[12] We begin by noting that the incredible dubiosity rule applies only in very narrow circumstances. See Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). The rule is expressed as follows:

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Id.*

[13] Those cases where we have found testimony inherently improbable or of incredible dubiosity have involved either situations where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," *Watkins v. State*, 571 N.E.2d 1262, 1265 (Ind. Ct. App. 1991), *aff'd in part and vacated in part*, 575 N.E.2d 624 (Ind. 1991), or the witness was so equivocal about the act charged that his uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Id*. The case before us does not fall within either category.

[14] To the extent that T.J.'s testimony regarding her sleeping position relative to that of Balkcom is inconsistent with her mother's testimony, we note that this is an issue of witness credibility. The function of weighing witness credibility lies

with the trier of fact, not this court. *Whited v. State*, 645 N.E.2d 1138, 1141 (Ind. Ct. App. 1995). We cannot reweigh the evidence and judge the credibility of the witnesses. *See Jones*, 783 N.E.2d at 1139. Furthermore, we cannot say that T.J.'s testimony that Balkcom molested her while her mother slept nearby was so inherently improbable that no reasonable person could believe it. *See Leyva v. State*, 971 N.E.2d 699 (Ind. Ct. App. 2012) (the testimony of child molesting victim that she awoke and felt defendant insert more than one of his fingers into her vagina while defendant's wife and defendant's two other children slept on the floor after watching movie was not inherently contradictory or so inherently improbable that no reasonable person could believe it).

[15] Also, the fact that T.J. initially told her mother that Balkcom inserted his penis into her vagina but not that Balkcom inserted his fingers into her vagina, then testified at trial that Balkcom did both does not make her testimony incredibly dubious. Importantly, the rule very narrowly applies to contradictions in the in-court statements of a single witness, not contradictions between pre-trial statements and trial testimony. *Buckner v. State*, 857 N.E.2d 1011, 1018 (Ind. Ct. App. 2006). Balkcom has not pointed to any part of T.J.'s testimony at trial that was inherently contradictory, and T.J. was never equivocal about whether the molestation occurred. *See Reyburn v. State*, 737 N.E.2d 1169 (Ind. Ct. App. 2000) (testimony of child molestation victim that defendant engaged in sexual intercourse with her in living room was not incredibly dubious, even if victim originally told police that incident had occurred on couch and then later testified that incident had originated on the couch and concluded on the floor, if

she had failed to tell police that defendant had locked door of house while molestation occurred, and if she told police that her father was the first person that she told about incident and then later testified that her sister was the first person she told). *Compare Sisson v. State*, 710 N.E.2d 203 (Ind. Ct. App. 1999), *trans. denied* (witness's testimony was found to be incredibly dubious when on direct examination witness testified regarding defendant's involvement in burglaries and then recanted testimony on cross-examination).

[16] The jury heard T.J.'s testimony, had the opportunity to determine the relative credibility of all of the witnesses, and found Balkcom guilty of two counts of child molesting. On appeal, Balkcom asks this court to invade the province of the jury by reweighing the evidence and reassessing witness credibility. We decline his invitation. As for the broader question of sufficiency, we again note that a conviction for child molesting may rest solely upon the uncorroborated testimony of the victim. *Turner*, 720 N.E.2d at 447. Here, the jury's determination was supported not only by T.J.'s testimony, but also by the testimony of S.J. that she woke briefly and noticed Balkcom pulling T.J.'s body close to him and by DNA evidence collected from T.J.'s undergarments. For all of these reasons, we conclude that the State presented evidence sufficient to support Balkcom's conviction.

[17] Affirmed.

Najam, J., and Bradford, J., concur.